**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 11, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

KARL DEE KAY,

      Plaintiff-Appellant,

    v.

NANCY BEMIS, RONALD
STAMPER, JEREMY HEYWOOD,
FNU GREEN, CASEY BOULTER,
JAN BODILY, and ESTHER
SCHUBE,

      Defendants-Appellees.

Nos. 07-4032 and 07-4081

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. NO. 2:05-CV-995-DS)**

---

Submitted on the brief:

Karl Dee Kay, Pro Se.

---

Before **HENRY**, **TYMKOVICH**, and **HOLMES**, Circuit Judges.[*]

---

**TYMKOVICH**, Circuit Judge.

---

    [*] After examining the opening brief and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

Karl Dee Kay, a Utah prisoner proceeding *pro se* and *in forma pauperis* (IFP), filed a 42 U.S.C. § 1983 civil rights complaint against several officials at the Bonneville Community Correctional Facility (BCCF), claiming multiple deprivations of his constitutional rights arising from his imprisonment. First, he claimed that the defendants violated the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc *et seq.*, and his First Amendment right to freely exercise his religion by denying him tarot cards, incense, and religious books. Second, he asserted that the defendants arrested him on a parole violation using a warrant based on knowingly false information and fabricated evidence, in violation of the Fourth Amendment. Third, he argued that defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment in retaliation for his seeking legal counsel. Finally, he averred his Fourteenth Amendment due process rights were violated during his parole revocation proceedings. Kay sought both an injunction and monetary damages. The district court dismissed each claim.

Having jurisdiction pursuant to 28 U.S.C. § 1291, we affirm in part, reverse in part, and remand for further proceedings.

## I. Procedural Background

Pursuant to the court's screening function for IFP cases under 28 U.S.C. § 1915(e)(2)(B)(ii),[1] the district court dismissed Kay's complaint, concluding it failed to state a claim upon which relief may be granted on four grounds.

The district court initially dismissed two defendants from the action based on Kay's failure to show an "affirmative link" between the alleged constitutional violation and the defendants. Second, the district court dismissed the First Amendment claim based on Kay's failure to demonstrate how the practice of his religion was burdened by the denial of tarot cards and other materials. Third, the district court then dismissed Kay's remaining claims based on his failure to show that his parole revocation was invalidated by another court. *See Crow v. Penry*, 102 F.3d 1086, 1087 (10th Cir. 1996). Finally, the district court denied his motion for an injunction because he was no longer held at the BCCF and thought that his motion presumed that he would be paroled and eventually sent back to the BCCF.

Kay appealed this decision, which resulted in the opening of Case No. 07–4032. Two days before, he also filed a timely motion for reconsideration in the district court. Construing this motion as a motion to alter or amend judgment

---

[1] "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted[.]" 28 U.S.C. § 1915(e)(2)(B)(ii).

under Federal Rule of Civil Procedure 59, the district court denied in part and granted in part the motion, allowing Kay to amend his complaint with respect to the First Amendment claim. He filed a motion for additional time to amend his complaint, which the district court denied. Kay failed to amend his complaint within the time permitted, and the district court again dismissed the claim. Kay appealed this decision separately, which resulted in the opening of Case No. 07–4081. The cases have been consolidated for procedural purposes.

## II. Analysis

### A. Standard of Review

We review de novo the district court's decision to dismiss an IFP complaint under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999). "Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Curley v. Perry*, 246 F.3d 1278, 1281 (10th Cir. 2001) (internal quotation omitted). "In determining whether a dismissal is proper, we must accept the allegations of the complaint as true and construe those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff." *Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002).

We apply the same standard of review for dismissals under § 1915(e)(2)(B)(ii) that we employ for Federal Rule of Civil Procedure 12(b)(6) motions to dismiss for failure to state a claim. *See Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997) (holding the standard of review for Rule 12(b)(6) and § 1915(e)(2)(B)(ii) dismissals are the same). We recently gave fuller meaning to our standard for Rule 12(b)(6) motions in light of the Supreme Court's 2007 decisions in *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1970 (2007), and *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). In the Rule 12(b)(6) context, "[w]e look for plausibility in th[e] complaint." *Alvarado v. KOB-TV, L.L.C.*, No. 06-2001, 2007 U.S. App. LEXIS 16720, at *7, 2007 WL 2019752 at *3 (10th Cir. July 13, 2007). In particular, we "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Id.* at *8 n.2. Rather than adjudging whether a claim is "improbable," "[f]actual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp.*, 127 S. Ct. 1955, 1965 (2007).

"In addition, we must construe a pro se appellant's complaint liberally." *Gaines*, 292 F.3d at 1224. This liberal treatment is not without limits, and "this court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (internal quotation omitted).

Applying these standards, we conclude that two of Kay's claims may state a claim for relief.

## B. Religious Freedom Claims

Kay makes both a First Amendment free exercise claim and a statutory claim under RLUIPA.

### 1. Free Exercise Claim

Kay first challenges the district court's dismissal of his religious freedom claim. After reviewing Kay's original complaint, we are satisfied that he alleges facts sufficient to "plausibly support a legal claim for relief" and reverse and remand this claim to the district court.

It is well-settled that "[i]nmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). Yet such protections are not without reasonable limitations. The Supreme Court has cautioned that prison inmates are also subject to the "necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* Accordingly, the Court has held that "a prison regulation imping[ing] on inmates' constitutional rights . . . is valid if it is reasonably related to legitimate penological interests." *Id.* at 349.

Thus, in order to allege a constitutional violation based on a free exercise claim, a prisoner-plaintiff must survive a two-step inquiry. First, the prisoner-

-6-

plaintiff must first show that a prison regulation "substantially burdened . . . sincerely-held religious beliefs." *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007). Consequently, "[t]he first questions in any free exercise claim are whether the plaintiff's beliefs are religious in nature, and whether those religious beliefs are sincerely held." *Snyder v. Murray City Corp.*, 124 F.3d 1349, 1352 (10th Cir. 1997). Second, prison officials-defendants may "identif[y] the legitimate penological interests that justif[ied] the impinging conduct." *Boles*, 486 F.3d at 1182.[2] At that point, courts balance the factors set forth in *Turner v. Safley,* 482 U.S. 78, 89–91 (1987), to determine the reasonableness of the regulation:

> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Boles*, 486 F.3d at 1181.[3]

---

[2] The burden then returns to the prisoner to "show that these articulated concerns were irrational." *Salahuddin v. Goord*, 467 F.3d 263, 275 (2d Cir. 2006).

[3] There may be an unresolved tension between *Turner v Safley*, 482 U.S. 78 (1987), which holds that an interference with a prisoner's free exercise in the prison context is unconstitutional if it is not "reasonably related to legitimate penological interests," and *Employment Division v. Smith*, 494 U.S. 872 (1990), which holds that the Free Exercise Clause is not offended by neutral rules of general applicability. The regulation here may be neutral and generally applicable – and therefore constitutional under *Smith* (even if challengeable under some other source of law, such as RLUIPA). In *Boles*, we acknowledged that

(continued...)

The district court prematurely dismissed Kay's claim at step one. The district court denied his claim because Kay failed to sufficiently plead: (1) what religion he practices, (2) whether his religious beliefs are sincerely held, and (3) how tarot cards, incense, and religious books are necessary to the practice of his religion.[4] This misconstrues the complaint.

First, Kay's complaint clearly identifies his religion as "Wicca."[5] Contrary to the district court's statement that his complaint only mentions Wicca once in reference to "Wiccan books," the complaint references Wicca four times. *See*

---

[3](...continued)
"[t]his court has yet to address the issue squarely," and left it for another day. *Boles*, 486 F.3d at 1181.

[4] In response to Kay's motion to reconsider, the court vacated in part its initial January 25, 2007 order dismissing the free exercise claim. The court then gave Kay leave to file an amended complaint on the free exercise claim within fifteen days. After denying Kay's motion to extend the time to file the amended complaint, Kay failed to file a timely amended complaint with the court. In response, the district court again dismissed the free exercise claims for the reasons set fourth in the January 25, 2007 order. Order, March 20, 2007, R., Doc. 43. Accordingly, we examine the court's January 25, 2007 order to analyze the reasons for the dismissal of the free exercise claim.

Because of the disposition of this case, we need not address Kay's claims pertaining to the court's denial of his motion for extension of time to file the amended complaint.

[5] "Wicca is a polytheistic faith based on beliefs that prevailed in both the Old World and the New World before Christianity. Its practices include the use of herbal magic and benign witchcraft." *O'Bryan v. Bureau of Prisons*, 349 F.3d 399, 400 (7th Cir. 2003) (internal quotation omitted).

Kay Compl., R., Doc. 3, at 5, 7. In two of those instances, Kay refers to Wicca as "his religion." *Id.*

Second, the court's assessment of the sincerity of Kay's beliefs was premature at this stage of the claim. "The inquiry into the sincerity of a free-exercise plaintiff's religious beliefs is almost exclusively a credibility assessment, . . . and therefore the issue of sincerity can rarely be determined on summary judgment," let alone a motion to dismiss. *Snyder*, 124 F.3d at 1352–53 (internal quotation omitted). We have said that summary dismissal on the sincerity prong is appropriate only in the "very rare case[]" in which the plaintiff's beliefs are "so bizarre, so clearly nonreligious in motivation that they are not entitled to First Amendment protection." *Id.* at 1353 (internal quotation omitted). On this record, such a determination is unwarranted. *See Dettmer v. Landon*, 799 F.2d 929, 933 (4th Cir. 1986) (holding that Wicca is a religion subject to First Amendment protection); *see also Pugh v. Caruso*, No. 1:06-cv-138, 2006 U.S. Dist. LEXIS 24709 (W.D. Mich. March 15, 2006) at *4 n.2. (stating that Michigan state penal regulations recognize Wicca as a religion and permits inmates one deck of tarot cards).

Reviewing his complaint, and taking the factual allegations as true, enough factual support exists to rationally and plausibly conclude that Kay is a sincere devotee of the Wiccan faith. Kay persistently asked prison administrators for permission to possess tarot cards in order to practice his religion. On two

occasions, he surreptitiously brought tarot cards into the BCCF and was disciplined for it. Kay Compl., R., Doc. 3, at 7. If any thing, these facts evince some conviction on Kay's part to practice his faith with the use of tarot cards.

Third, it is unnecessary for Kay to show that the use of tarot cards and the other items were "necessary" to the practice of his religion if his belief in their use was sincerely held. We acknowledge that other circuits require that a prison regulation must interfere with a tenet or belief that is "central" or mandated by religious doctrine before a prisoner may state a claim under § 1983. *See, e.g., Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997). The Tenth Circuit does not follow such a rule. In *LaFevers v. Saffle*, 936 F.2d 1117, 1119 (10th Cir. 1991), we held that a prisoner's belief in religious dietary practices is constitutionally protected if the belief is "genuine and sincere," even if such dietary practices are not doctrinally "required" by the prisoner's religion. "'Sincerely held' is different from 'central,' and courts have rightly shied away from attempting to gauge how central a sincerely held belief is to the believer's religion." *Watts v. Fla. Int'l Univ.*, 05-13852, Slip Op. at 10 (11th Cir. August 17, 2007).

We believe this rule more closely hews with Supreme Court precedent. *See Fowler v. Rhode Island*, 345 U.S. 67, 70 (1953) ("[I]t is no business of courts to say that what is a religious practice or activity for one group is not religion under the protection of the First Amendment."); *Frazee v. Ill. Dep't of Employment*

*Sec.*, 489 U.S. 829, 834 (1989) (explaining that the fact some Christian denominations do not "compel[]" their adherents to refuse Sunday work does not diminish the constitutional protection the belief enjoys); *Hernandez v. Commissioner*, 490 U.S. 680, 699 (1989) ("It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds."); *Employment Div., Dep't of Human Resources v. Smith*, 494 U.S. 872, 887 (1990) ("Judging the centrality of different religious practices is akin to the unacceptable business of evaluating the relative merits of differing religious claims.").

Accordingly, the district court erred in requiring Kay's pleading to indicate that the use of tarot cards and other items were "necessary" to the practice of his religion. Religious sincerity—not necessity—is the key component to satisfying the first step of a prisoner's free exercise claim at this stage of the litigation. As stated above, we believe that Kay's complaint sufficiently pleaded his belief in the use of tarot cards and the other requested items for religious purposes was sincerely held.

We remand this claim to the district court. We take no view on whether Kay can meet the other requirements for a claim for relief or whether the prison's

restrictions are justified (1) by reasonable penological interests, or (2) under step two of *Turner*.[6]

## 2. Religious Land Use and Institutionalized Persons Act

On appeal, Kay also asserts that the district court failed to address his RLUIPA, 42 U.S.C. § 2000cc-1, claim. We agree. Kay's initial complaint styles his claims under RLUIPA, yet the district court's order only construed his religious claim as a § 1983 action.

RLUIPA provides that "no [state or local] government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government shows that the burden furthers "a compelling governmental interest" and does so by "the least restrictive means." § 2000cc-1(a)(1)–(2). The Act defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc-5(7)(A). And we have held that RLUIPA applies in

---

[6] The question also remains whether the prison officials are entitled to qualified immunity in applying prison regulations to Kay's religious practices. Kay must show at the time of his challenged action it was clearly established that any regulation was unconstitutional. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). We have recognized that an officer's "reliance on a state statute, regulation, or official policy that explicitly sanctioned the conduct in question" may absolve the officer from knowing that his conduct was unlawful. *Roska v. Peterson*, 328 F.3d 1230, 1251–52 (10th Cir. 2003); *Lawrence v. Reed*, 406 F.3d 1224, 1232 (10th Cir. 2005). The exception to this rule is that "where a statute authorizes conduct that is 'patently violative of fundamental constitutional principles,' reliance on the statute does not immunize the officer's conduct." *Id.* The prison defendants have yet to file any responsive pleadings at this stage of the litigation outlining their other defenses to Kay's complaint.

the prison context. *See Ahmad v. Furlong*, 435 F.3d 1196 (10th Cir. 2006); *Hammons v. Saffle*, 348 F.3d 1250, 1258 (10th Cir. 2003); *Kikumura v. Hurley*, 242 F.3d 950, 960 (10th Cir. 2001). Accordingly, the standards under RLUIPA are different than under the free exercise clause of the First Amendment.

Kay was entitled to consideration of his claim under RLUIPA and we remand to the district court for further action on this matter.

## C. Other Claims

Kay also challenges the district court's resolution of the false arrest, cruel and unusual punishment, and denial of process claims as related to the revocation of his parole. The district court consolidated these claims and held that no relief challenging a parole revocation is cognizable under § 1983 unless the plaintiff can show the revocation was invalidated by either a state tribunal or a federal habeas corpus decision. *See Crow v. Penry*, 102 F.3d 1086, 1987 (10th Cir. 1996). Since Kay failed to demonstrate any attack on his parole revocation by a competent court, the district court dismissed the claim. For substantially the same reasons as the district court's order, we affirm the dismissal of these claims.

## D. Injunction

Finally, Kay challenges the district court's denial of his motion for injunctive relief. The district court made its decision "[b]ased on its finding that Plaintiff's complaint fails to state a claim on which relief may be granted" and thus held that it "cannot conclude that there is a substantial likelihood Plaintiff

will eventually prevail on the merits." Order, R., Doc. 32, at 9. Since we reverse and remand on Kay's religious freedom claims, the district court should vacate the denial of injunctive relief and reconsider that part of its order.

### III. Conclusion

For the foregoing reasons, we affirm in part and reverse in part. We remand to the district court for proceedings consistent with this decision. We also grant Kay's motion to proceed without prepayment of the filing fee. We remind Mr. Kay that he is obligated to continue to make partial payments until the entire fee has been paid.