**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 8, 2011**

Elisabeth A. Shumaker
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DERRICK R. PARKHURST,

     Plaintiff-Appellant,

v.

PITTSBURGH PAINTS, INC.;
ROBERT LAMPERT, individually and
in his official capacity as Wyoming
Department of Corrections Director;
JOHN COYLE, M.D., individually and
in his official capacity as Prison
Health Services Inc. Medical Doctor,

     Defendants-Appellees.

No. 10-8084

(D.C. No. 09-CV-00147-ABJ)
(D. Wyo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE,** Chief Judge, **TACHA** and **MURPHY**, Circuit Judges.

---

     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination
of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is,
therefore, submitted without oral argument.

---

     [*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Plaintiff Derrick Parkhurst, a Wyoming state prisoner appearing pro se, appeals from the district court's dismissal of his complaint against defendants PPG Industries, Inc. (PPG)[1], Robert Lampert, and John Coyle. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

I

Parkhurst is an inmate at the Wyoming State Penitentiary (WSP) in Rawlins, Wyoming. ROA, Vol. 1 at 11. In 1997, according to Parkhurst, WSP personnel painted "the entire North Facility of" the WSP using paint manufactured by PPG. Id. "During the painting at [WSP]," Parkhurst alleges, he "suffered a transient ischemic attack (TIA) and a stroke" which resulted in numerous injuries, including "temporary and permanent severe loss of intelligence . . . ." Id.

In early 2005, approximately eight years after suffering the alleged injuries, Parkhurst sued PPG and various prison employees alleging personal injury from exposure to the paint fumes. Parkhurst v. Pittsburgh Paints, Inc. (Parkhurst I), 213 F. App'x 747 (10th Cir. 2007). The district court dismissed his claims as time-barred. This court affirmed the district court's ruling, id. at 748, and the United States Supreme Court denied Parkhurst's petition for writ of certiorari.

---

[1] The caption of Parkhurst's complaint misidentified PPG as Pittsburgh Paints, Inc. ROA, Vol. 1 at 8. The district court and the parties, however, subsequently recognized that error and treated PPG as the named defendant. Id. at 222.

Parkhurst then filed a number of motions with the district court, including a motion for relief from judgment and a motion for appointment of counsel, seeking to revive his lawsuit. The district court denied those motions on March 4, 2010, and this court affirmed the district court's rulings on appeal.[2] Parkhurst v. Pittsburgh Paints Inc. (Parkhurst II), Nos. 10-8026, 10-8027, 2010 WL 4069430 at *1 (10th Cir. Oct. 19, 2010).

On June 25, 2009, before the district court had ruled on his post-appeal motions in the original case, Parkhurst initiated the instant proceedings by filing a pro se civil complaint against PPG, Lampert, the director of the Wyoming Department of Corrections (WDOC), and Coyle, a physician employed by a private company that contracts with WDOC to provide services to inmates at WSP. ROA, Vol. 1 at 8. The complaint alleged that "on or about the night of June 16 and 17, 2005," Parkhurst, as a result "of the stroke(s) caused by the paint poisoning" in 1997, "fell out of the upper bunk he was assigned to" by WSP officials and "suffer[ed] severe bruising of his left thigh and other trauma." Id. at 13. The complaint alleged that WSP officials thereafter allowed Parkhurst to occupy the lower bunk of a double cell until February 12, 2009, when he was "re-

---

[2] This court also denied Parkhurst leave to proceed in forma pauperis on appeal and noted: "With the dismissal of these . . . appeals, Mr. Parkhurst has now earned at least three strikes under [28 U.S.C.] § 1915(g); accordingly, he may bring no more civil actions or appeals under § 1915 unless he is under imminent danger of serious physical injury." Parkhurst II, 2010 WL 4069430 at *2.

assigned . . . to a different block and an upper bunk within that block." Id.

Parkhurst allegedly "refused the assignment," and WSP officials, in response,

placed him in segregation for approximately three weeks before "assign[ing] him

to a lower bunk on March 4, 2009 . . . ." Id. According to Parkhurst's complaint,

defendants knew he was "at risk of falling out of the top bunk . . . and concealed"

that knowledge. Id. at 9. More specifically, the complaint alleged, defendants

conspired to assign him to the top bunk in order to "cover-up . . . the original

[1997] incident." Id.

The three defendants each moved to dismiss Parkhurst's complaint. In

particular, PPG moved to dismiss the complaint for failure to state a claim upon

which relief could be granted and as "barred by res judicata . . . ." Id. at 70.

Lampert moved to dismiss the complaint "for failure to state a claim, failure to

exhaust . . . administrative remedies and lack of subject matter jurisdiction." Id.

at 117. Coyle likewise moved to dismiss the complaint for failure to state a claim

and for failure to exhaust administrative remedies. Id. at 144.

In his response in opposition to defendants' motions to dismiss, Parkhurst

fleshed out his original allegations against defendants. With respect to PPG,

Parkhurst alleged that it "conspired with the other Defendants to conceal

[Parkhurst]'s allegations" that the paint used by defendants at WSP and

manufactured by PPG "caused [Parkhurst] to suffer a stroke, with attendant

difficulties." Id. at 180. Parkhurst further alleged that PPG "failed to properly

4

label the paint" and "warn . . . of its propensity to cause strokes." Id. With respect to defendants Lampert and Coyle, Parkhurst alleged "[t]here was a further and separate act by the[m] . . . in pursuance of the original conspiracy, the act of mis-assigning [him] to an upper bunk, when all the indications were that he should not have been assigned to an upper bunk." Id. Parkhurst alleged that the upper bunk assignment was given because Lampert and Coyle "were afraid that if they did not assign [him] to an upper bunk, they would be effectively admitting their own prior misconduct." Id. Finally, in what was apparently intended as a separate allegation of conspiracy, Parkhurst alleged that Lampert and Coyle conspired "to violate [his] right to effective medical treatment, and to deny that any injury had taken place." Id. at 177.

On August 30, 2010, the district court issued an order granting defendants' motions to dismiss. Id. at 222. That order first addressed Parkhurst's claims that arose out of "the events that allegedly took place in February through March 2009," i.e., his alleged segregation for refusing to comply with WSP officials' order to take an upper bunk assignment. Id. at 229. The district court concluded that those claims were subject to dismissal without prejudice under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997(e)(a), due to Parkhurst's "non-compliance with the exhaustion requirement . . . ." Id.

The district court's order of dismissal then addressed Parkhurst's specific claims against each of the three named defendants. With respect to PPG, the

5

district court noted that Parkhurst's complaint "d[id] not allege that PPG forced him to take an upper bunk or that PPG placed him in segregation," nor did Parkhurst offer the court any evidence to establish that PPG "ha[d] any agents acting on its behalf at" WSP. Id. at 230. Thus, the district court concluded, any claims against PPG arising out of the events in 2009 were subject to dismissal "for failure to state a claim for which relief c[ould] be granted." Id. As for Parkhurst's remaining claims against PPG, the district court concluded that "the only reference" in Parkhurst's complaint "to the 'acts' of PPG [was] in the background" section and "describe[d] the events that formed the basis of his previous litigation . . . ." Id. at 231. The district court held that "Parkhurst [wa]s barred from bringing claims arising out of the previously litigated matter . . . under the doctrine of res judicata." Id. "Finally," the district court concluded, "even if PPG had not previously been sued by . . . Parkhurst, the claims asserted against PPG . . . [we]re time barred, just as they were in the first action." Id. at 232.

As for defendants Lampert and Coyle, the district court construed Parkhurst's complaint as asserting claims against them for violating the Eighth Amendment's prohibition against cruel and unusual punishment by forcing him to take an upper bunk assignment. Id. at 233, 238. The district court concluded, however, that Parkhurst had failed to establish "a 'serious' deprivation based on the failure of [these defendants] to provide him a lower bunk." Id. at 235.

6

Further, the district court concluded that Parkhurst "d[id] not state any facts to support the conclusion that Defendant Lampert had any knowledge that assigning [Parkhurst] a top bunk would be a substantial risk to . . . Parkhurst." Id. Likewise, the district court concluded that Parkhurst did not state any facts to establish that Coyle was deliberately indifferent to Parkhurst's medical needs or that Coyle "had any knowledge that assigning [Parkhurst] a top bunk would be a substantial risk." Id. at 239. Finally, the district court concluded that, "even assuming all the facts as alleged by . . . Parkhurst [we]re true, he fail[ed] to state an Eighth Amendment claim" because he "d[id] not have a constitutional right to be assigned a particular bunk and the fact that [defendants] did not order a lower bunk restriction d[id] not state a claim under the Eighth Amendment." Id. at 235.

The district court entered judgment in the case on August 30, 2010. Parkhurst filed a timely notice of appeal.

## II

Parkhurst asserts two arguments on appeal. First, he contends the district court erred in concluding he failed to exhaust available administrative remedies with respect to his claims arising out of the events that allegedly occurred in February and March of 2009. Second, Parkhurst contends the district court erred in granting defendants' motions to dismiss because there were unresolved issues of material fact. As discussed below, however, we disagree with both of these contentions and conclude the district court properly granted defendants' motions

7

to dismiss.

*Standard of review*

We review de novo a district court's dismissal for failure to exhaust administrative remedies. See Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002). We likewise review de novo a district court's dismissal of a prisoner's complaint for failure to state a claim. See Kay v. Bemis, 500 F.3d 1214, 1217 (10th Cir. 2007).

*Exhaustion of remedies*

Parkhurst contends the district court erred in concluding that he failed to exhaust his administrative remedies with respect to his claims arising out of the alleged events in early 2009. To begin with, Parkhurst asserts, the WDOC's "Statement of Policy and Procedure #3.100," entitled "Inmate Communication and Grievance Procedure," expressly prohibits grievances over classification issues and misconduct reports. Aplt. Br. at 2. In addition, Parkhurst asserts, other WDOC policy statements prohibit frivolous or malicious grievances and indeed allow for disciplinary action to be taken against an inmate filing such grievances. Id. at 4. Thus, he argues, it was improper for him to file a grievance regarding the events of early 2009.

Alternatively, Parkhurst contends, he "did exhaust all remedies that were available to him" by first completing and sending to the warden of WSP a "WDOC Form #320 'Inmate Communication Form'" objecting to his February

8

2009 upper bunk assignment and his ensuing segregation for objecting to that assignment, id. at 5, and then subsequently filing "a WDOC Form #321 'Inmate Grievance Form'" and two inmate grievance appeal forms asserting the same objections. Id. at 6.

We reject Parkhurst's arguments. The PLRA requires prisoners to exhaust available administrative remedies before suing over prison conditions. See 42 U.S.C. § 1997e(a). Because a state prison system's grievance procedure defines the steps necessary for exhaustion, a prisoner may only exhaust by properly following all of the steps laid out in that procedure. Jones v. Bock, 549 U.S. 199, 218 (2007).

Here, Lampert persuasively argues that, under the WDOC's grievance procedure, Parkhurst's "refusal of an upper bunk assignment and his subsequent segregation is not a classification proceeding," Lampert Aplee. Br. at 8, and thus "Parkhurst certainly had the ability to present a grievance, at the lowest level, regarding his assignment to an upper bunk and to continue up the chain of command culminating in a decision by . . . Lampert." Id. at 9. Moreover, although Parkhurst attempted to grieve the upper bunk assignment and the ensuing segregation order, it is clear from the record that he failed to follow the specific steps outlined by the WDOC for doing so (i.e., presenting a grievance at the lowest level and then appealing if necessary), and was expressly informed of

9

this fact by WDOC personnel.[3]  Thus, as the district court correctly concluded, Parkhurst failed to establish that he exhausted the administrative remedies made available to him under the WDOC's grievance procedure.  Accordingly, the district court properly dismissed without prejudice Parkhurst's claims arising out of the incidents that allegedly occurred at WSP in February and March of 2009.

*Unresolved issues of material fact*

In his second issue on appeal, Parkhurst contends the district court erred in granting defendants' motions to dismiss because there were unresolved issues of material fact.  Aplt. Br. at 9.  In support, Parkhurst asserts that "[t]his case came about because certain members of a conspiracy <u>which has already been litigated</u> committed certain acts in support of the original conspiracy."  Id. at 11 (emphasis in original).  "The acts complained of," Parkhurst asserts, "were to force [him] to accept an upper bunk assignment, while knowing that such an assignment might very well result in [his] falling from that bunk," and he "did indeed fall."  Id.  "The intent of the Defendants in assigning [him] to an upper bunk from which he

---

[3] For example, when Parkhurst attempted to file an appeal directly with Lampert, Lampert sent Parkhurst a letter stating, in pertinent part:

> I am in receipt of your unnumbered Inmate Grievance Appeal Form; however, you must first follow the steps of the grievance process at the institutional level prior to filing an appeal with this office.  Please see Section IV.G.1 of the [W]DOC Inmate Communication and Grievance Procedure.
>
> Accordingly, your grievance appeal will not be accepted and is being returned for proper filing.

Aplt. Br. at 7.

would eventually fall," Parkhurst argues, "was because they were in fear that if they did not assign him so, they would . . . effectively have admitted their liability" for the injuries that occurred to him in 1997.  Id.

We reject Parkhurst's arguments.  As we outlined above, his claims against Lampert and Coyle arising out of the purported events in February and March of 2009 were properly dismissed by the district court without prejudice due to his failure to exhaust administrative remedies.  To the extent Parkhurst sued PPG for the alleged events of 2009, the district court properly concluded that Parkhurst failed to set forth any specific allegations of fact linking PPG to those events, and thus failed to state a claim upon which relief could be granted.  As for Parkhurst's claims arising out of the alleged events of June 2005, the district court concluded that those claims were subject to dismissal on a number of substantive grounds, none of which Parkhurst has challenged on appeal.

The judgment of the district court is AFFIRMED.  Parkhurst's motion for leave to proceed in forma pauperis on appeal is DENIED.[4]

Entered for the Court

Mary Beck Briscoe
Chief Judge

---

[4] Parkhurst is obligated to make immediate payment of the unpaid balance due the Clerk of the District Court.