FILED
**United States Court of Appeals**
**Tenth Circuit**

**August 14, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JOSEPH ANTHONY MCKINLEY,

　　　　Plaintiff-Appellant,

v.

MITZI MADDOX;
DARLENE ROBINSON,

　　　　Defendants-Appellees.

No. 11-6263
(D.C. No. 5:11-CV-00051-D)
(W.D. Okla.)

**ORDER AND JUDGMENT***

Before **BRISCOE**, Chief Judge, **McKAY** and **LUCERO**, Circuit Judges.

　　　　Joseph Anthony McKinley, an inmate in the custody of the Oklahoma

Department of Corrections (ODOC), appeals pro se the district court's dismissal of

his 42 U.S.C. § 1983 civil rights action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand for further

---

* 　　　　After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

proceedings consistent with this order and judgment.  We grant McKinley's application to proceed in forma pauperis (IFP) on appeal.

## Background

McKinley filed a pro se civil rights complaint against Mitzi Maddox and Darlene Robinson.  He alleged that Maddox and Robinson are employees at the Enid Community Corrections Center (ECCC), where McKinley was incarcerated beginning on October 13, 2010.  Robinson is a Case Manager, and Maddox is the Case Manager Supervisor.  McKinley alleged in his complaint that Maddox and Robinson denied him his right to practice his religion and participate in offsite religious activities from October 18 to November 22, 2010.

McKinley claimed that on October 18, Maddox and Robinson informed him that he was restricted from leaving ECCC, and therefore not permitted to participate in any outside activities, because he was on Executive Review.  Defendants told McKinley that they needed to prepare a packet and submit it for approval before he could go offsite.  That same day, however, Maddox approved McKinley's request to go offsite to play piano at a banquet.  On October 22, Maddox also allowed McKinley to go shopping offsite.  He alleged that each week thereafter he was again permitted to participate in offsite shopping activities.

On October 25, 2010, Maddox sent a memo to Reginald Hines, Deputy Director of Community Corrections.  Maddox's memo referenced "Exception for Executive Review," and indicated that McKinley was serving a four-year sentence

for drug trafficking. R. at 21. Maddox stated, "ECCC is requesting that Mr. McKinley be allowed to attend church services, go on shopping trips, and be placed on a [work] crew." *Id*.

McKinley alleged that he signed up at ECCC Central Control to go to an offsite church service on October 31, 2010. He was permitted to leave ECCC, and he proceeded to the church. But before the service began, an ECCC officer located him at the church and brought him back to ECCC. McKinley alleged that, when he returned, a lieutenant recited to him Maddox's position regarding his restrictions and referred him to a memo that Maddox had submitted to Central Control on October 20, 2010.

On November 15, 2010, McKinley submitted written Requests to Staff to Maddox and Robinson, asking for copies of the documentation related to his Executive Review. Maddox responded that the forms she had previously sent to Hines had been re-transmitted to Hines' office on November 16. She stated that she would stay on top of the issue and try to get Hines' approval that week.

The next day, November 17, McKinley was selected to be on a work crew. He again signed out of ECCC and was permitted to go offsite. On November 18, McKinley spoke to Maddox about his Executive Review, disputing that he was subject to such restrictions. He noted that, while he had not been allowed to go offsite for religious activities, he had been permitted to go offsite for other activities. That same day, McKinley submitted another Request to Staff to Maddox, challenging

his placement on Executive Review.  Maddox responded, "Mr. Hines has the authority to review for extra privileges granted at community.  Executive Reviews are considered higher risk.  I have no [written policies] to provide you." *Id.* at 15.

On November 22, 2010, Hines approved McKinley's participation in offsite activities, per Maddox's October 25 memo.  Robinson responded to McKinley's November 15 Request to Staff on November 29, indicating that she had given him a copy of a written policy and talked to him extensively about Executive Review.  She noted, as well, that he had been approved for offsite activities.

McKinley's complaint referenced 42 U.S.C. § 1983 and explicitly alleged violations of the First Amendment of the United States Constitution, the religious-liberty and equal-protection provisions of the Oklahoma Constitution, the Oklahoma Religious Freedom Act, and ODOC policies.  Maddox and Robinson moved to dismiss McKinley's complaint, contending he had failed to exhaust his administrative remedies.  In a report and recommendation (R&R), a magistrate judge concluded that defendants' motion should be denied because McKinley had exhausted his administrative remedies.  But the magistrate judge recommended an alternative basis for dismissal, concluding that McKinley's complaint should be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) because he failed to allege a pervasive violation of his right to freely exercise his religion, or facts demonstrating that Maddox and Robinson personally participated in the alleged violation of his

constitutional rights.[1]  The magistrate judge also recommended that the court decline to exercise supplemental jurisdiction over McKinley's state-law claims.

McKinley filed objections to the magistrate judge's R&R, asserting additional factual allegations.  He stated that he is a devout Baptist, elaborating that "it is a necessary requirement [for him] to be under the guidance, training, counseling and tutelage of a pastor/teacher. . . .  Bible study and worship services are significant to the growth of Plaintiff's faith."  R. at 99-100.  McKinley questioned the validity of the Executive Review restrictions because Maddox allowed him to go offsite for various non-religious activities before Hines finally approved him going offsite for any purpose.  He also alleged that Maddox was the employee at ECCC responsible for coordinating religious services, but there were no religious services or activities offered onsite at ECCC during the time that he was restricted from going to offsite church services.  McKinley claimed that he had talked to Robinson and Maddox about the lack of religious services at ECCC.  McKinley asserted that defendants denied him his right to exercise his religious beliefs by precluding him from attending offsite services for over one month, while failing to provide onsite church services or allowing faith-based volunteers onsite during that time period.

McKinley also claimed that the only offenders at ECCC who were restricted from attending offsite church services were those who had been convicted of drug

---

[1]    The provisions of 28 U.S.C. § 1915 govern IFP proceedings in federal courts. As he does in this appeal, McKinley proceeded IFP in the district court.

trafficking. He referenced ECCC's Steps Program under which offenders are not permitted to attend worship services outside of ECCC until they have reached Step 2.[2] McKinley asserted that, under the Executive Review restrictions, he remained precluded from attending offsite church services even after reaching Step 2.

The district court reviewed the magistrate judge's R&R de novo. In addition to the allegations in his complaint, the court also considered McKinley's supplemental factual allegations in his objections to the R&R. Citing *Gallagher v. Shelton*, 587 F.3d 1063 (10th Cir. 2009), the court held "that a one-month delay in obtaining approval of Plaintiff's request to attend religious services does not amount to a First Amendment violation." R. at 108. The court determined that McKinley had not shown a substantial burden on his religious beliefs based on the temporary delay in attending offsite church services while his administrative request was being processed. Furthermore, although McKinley characterized the defendants' actions as restricting a constitutional right, the court noted that the "right" to attend religious services *outside of the ECCC* was based on the facility's Steps Program under which offenders earned such privileges, and that "[a]ny contention that these rules [under that program] are invalid as not reasonably related to legitimate penological interests is untenable." R. at 109 (quotations omitted). The district court adopted the

---

[2]    McKinley had previously attached a copy of the policy describing the Steps Program to his opposition to the defendants' motion to dismiss.

magistrate judge's R&R and dismissed McKinley's complaint for failure to state a claim upon which relief can be granted.

## Standard of Review

"We review de novo the district court's decision to dismiss an IFP complaint under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim." *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007). "We apply the same standard of review for dismissals under § 1915(e)(2)(B)(ii) that we employ for Federal Rule of Civil Procedure 12(b)(6) motions to dismiss for failure to state a claim." *Id.* Thus, "we look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief," and "factual allegations in a complaint must be enough to raise a right to relief above the speculative level." *Id.* at 1218 (quotations and brackets omitted). "In determining whether a dismissal is proper, we must accept the allegations of the complaint as true and construe those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff." *Id.* at 1217 (quotation omitted). In addition, "we must construe a pro se appellant's complaint liberally." *Id.* at 1218 (quotation omitted).

## Discussion

On appeal, McKinley contends that the district court erred in dismissing his action because his complaint states claims for relief under the First and Fourteenth Amendments and the Equal Protection Clause, as well as the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1. Because the district

court addressed only whether McKinley's complaint stated a First-Amendment free-exercise claim, we address that claim first.

"Under the First and Fourteenth Amendments, inmates are entitled to the reasonable opportunity to pursue their sincerely-held religious beliefs. What constitutes a 'reasonable opportunity' is determined in reference to legitimate penological objectives." *Gallagher*, 587 F.3d at 1069 (citation omitted). In order to state a constitutional violation based on a free-exercise claim, a prisoner must allege that defendants "substantially burdened his sincerely-held religious beliefs." *Id.* (quotation and brackets omitted). And he "must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983." *Id.* at 1070 (quotation omitted). If the prisoner satisfies this initial step, defendants "may identify the legitimate penological interests that justified the impinging conduct," and "[t]he burden then returns to the prisoner to show that these articulated concerns were irrational." *Kay*, 500 F.3d at 1218 & n.2 (quotations and brackets omitted). The court then balances factors set forth by the Supreme Court "to determine the reasonableness of the regulation." *Id.* at 1219 (listing the relevant factors).[3]

Relying on *Gallagher*, the district court dismissed McKinley's claim at the initial step, holding that he failed to allege facts demonstrating a substantial burden on the exercise of his sincerely-held religious beliefs. In *Gallagher*, the prisoner

---

[3] A prisoner asserting a § 1983 claim must also allege facts showing personal participation by the defendants in the constitutional violation. *See Gallagher*, 587 F.3d at 1069.

alleged that two of his requests for special food on religious holidays were not approved by the defendants until after those holidays had passed, and on one occasion he was served food that was not prepared according to kosher requirements. 587 F.3d at 1070. We held that the "defendants' actions were, at most, isolated acts of negligence, not pervasive violations of [the prisoner's] right to free exercise of religion." *Id.* We therefore affirmed the district court's dismissal of the prisoner's claims because he failed to allege a substantial burden on the exercise of his religious beliefs. *Id.* at 1070-71. Citing *Gallagher*, the district court reasoned that McKinley had not alleged a substantial burden on the exercise of his religious beliefs based on the temporary delay in being permitted to attend offsite church services while his administrative request was being processed. We conclude that the district court construed too narrowly the facts alleged by McKinley. Properly construed, *Gallagher* is distinguishable.

First, McKinley alleged more than "acts of negligence." *Id.* at 1070. If his only allegation were that defendants negligently delayed the approval of his request for religious accommodation, his claim would indeed be subject to dismissal under *Gallagher*. But McKinley alleged that Maddox intentionally prevented him from attending offsite religious services under the guise of Executive Review restrictions when she had the authority to override those restrictions based on her granting McKinley permission to go offsite from ECCC for non-religious purposes. Moreover, McKinley alleges that Maddox was the employee at ECCC responsible for

- 9 -

coordinating religious services, yet she failed to provide alternative, onsite religious services during the time that she precluded him from attending offsite services.

Second, McKinley did not allege only "isolated acts." *Id.* In *Gallagher*, only "a few" of the prisoner's requests for special food on religious holidays were not timely approved, and he alleged only a single violation of his kosher diet. *Id.* We recently addressed a "de minimus burden" on religious exercise in *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1321 (10th Cir. 2010) (quotation omitted). In that case, we initially defined "substantial burden"; as relevant here, a substantial burden exists "when a government . . . prevents participation in conduct motivated by a sincerely held religious belief." *Id.* at 1315.[4] We then emphasized "that [not] every infringement on a religious exercise will constitute a substantial burden." *Id.* at 1316. In *Abdulhaseeb*, a prisoner claimed that on one occasion he was forced to accept foods on his meal tray that were impermissible under his Islamic diet. *Id.* at 1321. We affirmed summary judgment for the defendants on the prisoner's claim, stating, "We are not willing to conclude . . . that every single presentation of a meal an inmate considers impermissible constitutes a substantial burden on an inmate's religious exercise." *Id.*

---

[4] We set forth this definition of "substantial burden" in *Abdulhaseeb* as that term is used in RLUIPA. *See* 600 F.3d at 1315; 42 U.S.C. § 2000cc-1(a). But we noted that Congress intended "substantial burden" under RLUIPA to be interpreted consistent with "the Supreme Court's articulation of the concept of substantial burden on religious exercise." 600 F.3d at 1315 (quotation and brackets omitted). Therefore, our discussion of substantial burden in *Abdulhaseeb* applies as well to a First-Amendment free-exercise claim.

Here, unlike in *Gallagher* or *Abdulhaseeb*, McKinley alleges more than an isolated or de minimus burden on his exercise of his sincerely-held religious beliefs: he claims he was intentionally denied the right to attend all church services, either offsite or onsite at ECCC, for a month. Defendants do not point us to any case law holding that such a burden on religious exercise is insubstantial. Thus, we hold that the district court erred in dismissing McKinley's First-Amendment free-exercise claim, and we remand to the district court for further proceedings. We express no view on whether McKinley can meet the other requirements for a claim for relief, including allegations of facts showing each defendant's personal participation in the constitutional violation. *See Gallagher*, 587 F.3d at 1069.

McKinley also contends that his complaint states claims for relief under RLUIPA and the Equal Protection Clause. The district court did not address the sufficiency of his complaint with respect to these claims. Defendants emphasize that McKinley did not cite either RLUIPA or the federal Equal Protection Clause in his complaint. In light of our remand, we leave it to the district court to determine in the first instance if the factual allegations in McKinley's pro se complaint "plausibly support a legal claim for relief" under RLUIPA or the Equal Protection Clause, *Kay*, 500 F.3d at 1218 (quotation omitted), and whether McKinley should be granted an opportunity to amend his complaint to avoid dismissal, *see id* at 1217 (holding dismissal of a pro se complaint under § 1915(e)(2)(B)(ii) is proper only if "it would be futile to give [the plaintiff] an opportunity to amend").

The judgment of the district court is REVERSED AND REMANDED for further proceedings consistent with this order and judgment. McKinley's application to proceed IFP on appeal is GRANTED.

<div style="margin-left: 50%;">

Entered for the Court


Mary Beck Briscoe
Chief Judge

</div>