**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 15, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

RICHITA MARIE HACKFORD,

    Plaintiff - Appellant,

v.

UNITED STATES DEPARTMENT OF
INTERIOR; MARK LEE GREENBLAT,
Inspector General; DEB HAALAND,
Secretary of the Interior; BUREAU OF
INDIAN AFFAIRS; DARRYL
LACOUNTE; THE BUREAU OF LAND
MANAGEMENT; TRACY STONE
MANNING,

    Defendants - Appellees.

No. 25-4054
(D.C. No. 2:24-CV-00700-DAO)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **CARSON**, **BALDOCK**, and **KELLY**, Circuit Judges.
_____

Richita Hackford filed this pro se action seeking, in relevant part, to challenge

her classification as a member of the Ute Indian Tribe.  The district court dismissed

the action under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

relief could be granted.  Ms. Hackford now appeals.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I

### A)  Statutory background

This case involves what this court has previously described as "a hard-to-find federal statute sometimes known as the Ute Partition Act" (UPA).  *Hackford v. Utah*, 827 F. App'x 808, 809 (10th Cir. 2020) (*Hackford 2020*).[1]  The UPA was passed by Congress in 1954

> to provide for the partition and distribution of the assets of the Ute
> Indian Tribe of the Uintah and Ouray Reservation in Utah between the
> mixed-blood and full-blood members thereof; [and] for the termination
> of Federal supervision over the trust, and restricted property, of the
> mixed-blood members . . . .

25 U.S.C. § 677.[2]

"To achieve this goal, Congress directed the tribe to 'submit to the Secretary [of the Interior] a proposed roll of the full-blood members of the tribe, and a proposed roll of the mixed-blood members of the tribe,' after which the Secretary would publish those rolls in the Federal Register."  *Hackford 2020*, 827 F. App'x

---

[1] As we noted in *Hackford 2020*, "[t]he UPA was previously codified in the United States Code," but "Westlaw and Lexis now list" the applicable U.S. Code "sections as 'Omitted.'"  827 F. App'x at 809 n.1.  "The UPA's full text remains in the Statutes at Large, however, so we will cite to . . . the previous U.S. Code codification."  *Id.*

[2] Because the statute "specifically employ[ed] the terms 'full-blood' and 'mixed-blood,' we feel compelled, for purposes of consistency and clarity, to do the same."  *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 133 n.3 (1972).  "No slur or offense whatsoever is intended" by our use of these terms.  *Id.*

at 809 (quoting 25 U.S.C. § 677g). "Upon receiving a distribution of tribal assets, 'Federal supervision [over a mixed-blood] member and his property [would] thereby be terminated.'" *Id.* (quoting 25 U.S.C. § 677*o*(a)). Congress also directed the Secretary, "upon fulfilling certain other requirements, . . . '[to] publish in the Federal Register a proclamation declaring that the Federal Trust relationship to such individual is terminated.'" *Id.* (quoting 25 U.S.C. § 677v). Upon publication of this proclamation,

> such [mixed-blood] individual shall not be entitled to any of the services performed for Indians because of his status as an Indian. All statutes of the United States which affect Indians because of their status as Indians shall no longer be applicable to such member over which supervision has been terminated, and the laws of the several States shall apply to such member in the same manner as they apply to other citizens within their jurisdiction.

25 U.S.C. § 677v.

"On August 26, 1961, the Secretary issued a proclamation [(hereinafter "Termination Proclamation")] finalizing the termination of the mixed-blood group from the Tribe." *Ute Distrib. Corp. v. Sec'y of Interior of U.S.*, 584 F.3d 1275, 1279 (10th Cir. 2009). The Termination Proclamation

> stated, in pertinent part, "that effective midnight August 27, 1961," mixed-blood members of the Tribe would "not be entitled to any of the services performed for Indians because of [their] status as . . . Indian[s]," and "[a]ll statutes of the United States which affect Indians because of their status as Indians [would] no longer be applicable to [mixed-bloods] . . . , and the laws of the several States shall apply to [mixed-bloods] in the same manner as they apply to other citizens within their jurisdiction."

3

*Id.* (quoting *Ute Indian Tribe of the Uintah and Ouray Reservation in Utah*, 26 Fed. Reg. 8042 (Aug. 24, 1961)).

### B) Factual and procedural background

Ms. Hackford is listed on the Federal Register as a mixed-blood Ute over whom federal supervision has terminated. *See Mixed Blood Members and Full-Blood Members of the Ute Indian Tribe of Uintah and Ouray Reservation, Utah*, 21 Fed. Reg. 2208, 2209 (Apr. 5, 1956) (listing "Hackford, Richita Marie" on the final roll of mixed-blood members). Although it is unclear from the record whether Ms. Hackford filed an appeal of this determination, it is apparent that, even if she did, the Secretary disposed of such appeal. *Id.* at 2208 (stating that "[d]isposition has been made of all appeals to the Secretary contesting the inclusion or omission of the name of any person on or from the proposed rolls as published in the Federal Register of February 2, 1955"); *see* 25 U.S.C. § 677g (providing that the Secretary's decisions regarding appeals "shall be final and conclusive").

According to Ms. Hackford, however, she is a "Shosone Utah Indian by right of birth" who has "resid[ed] [her] entire life within the 1861 Uinta River Valley . . . Reservation." R. at 5. In other words, Ms. Hackford disputes she was ever a member of the Ute Indian Tribe.

In September 2024, Ms. Hackford filed this action alleging that, due to the operation of the UPA and the Termination Proclamation, she was wrongfully terminated as a member of the Shoshone Tribe and thereby subjected to Utah state jurisdiction. More specifically, Ms. Hackford's complaint alleged that the

4

defendants, in implementing the UPA, incorrectly determined she was a mixed-blood member of the Ute Indian Tribe of the Uintah and Ouray Reservation, when in fact she is a member of the Shoshone Utah tribe.

Because Ms. Hackford was proceeding in forma pauperis, the district court screened her complaint and concluded it "fail[ed] to clarify who" Ms. Hackford "intend[ed] to sue or in what capacity," and, in any event, "fail[ed] to state a plausible claim against any [of the named] defendants." *Id.* at 79. Out of an abundance of caution, the district court granted Ms. Hackford leave to file an amended complaint.

Ms. Hackford filed an amended complaint substantially similar to her original complaint. In April 2025, the district court screened the amended complaint and dismissed the action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The district court noted that the amended complaint, though "difficult to follow," "appear[ed] to assert the same claims" as the original complaint and that Ms. Hackford was seeking a ruling that she was "a Shoshone Utah Indian." R. at 115 (internal quotation marks omitted). The district court concluded, however, that "under the UPA, Ms. Hackford was required to appeal her membership determination to the Secretary of the Interior by April 4, 1955." *Id.* at 117-18. The district court further noted that Ms. Hackford did "not allege she made such an appeal" and that, in any event, her name "appears on the final terminated member roll published in the Federal Register—meaning even if she did file an appeal, the Secretary disposed of such appeal" and that her membership status is now final. *Id.* at 118. As for the amended complaint's citation

to the "U.S. Senate Act [of] May 5, 1864," the district court concluded that act, which "created the Uintah Valley Reservation," "did not create a private cause of action." *Id.* at 118–19. The district court therefore dismissed the amended complaint for failure to state any cognizable claim.

II

We review de novo a district court's dismissal of a complaint for failure to state a claim under § 1915(e)(2)(B)(ii). *See Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007). Dismissal is proper when it is "obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Id.* (internal quotation marks omitted). Employing the same standard of review applicable to dismissal under Federal Rule of Civil Procedure 12(b)(6), "we accept the well-pleaded allegations of the complaint and construe them in the light most favorable to the plaintiff." *Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*, 45 F.4th 1236, 1247 (10th Cir. 2022) (internal quotation marks omitted); *see Kay*, 500 F.3d at 1217. Because Ms. Hackford is a pro se litigant, "we construe h[er] pleadings liberally, but do not act as h[er] advocate." *Ford v. Pryor*, 552 F.3d 1174, 1178 (10th Cir. 2008).

In her lengthy appellate brief, Ms. Hackford repeats and attempts to expand upon the allegations of her amended complaint. She alleges she is "a Shoshone Utah Indian" whose "lineage trac[es] back to Chief Wakara of the Timpanogos Shoshone Nation, Utah Territory." Aplt. Br. at 4. She further alleges that "the Shoshone Utah Indians retain their 'original aboriginal Indian land title' as owners of the 1861

6

Uinta(h) Reservation." *Id.* at 8. She alleges that, as a result of "[t]he combined acts and numerous frauds enacted by the" appellees, "[t]he 1880 Colorado Confederate state Ute citizens unlawfully walked away with the Senate May 5, 1864 (13 Stat. 63) Shoshone Utah Indians 1861 Uinta(h) Reservation." *Id.* at 19. She also alleges that appellees "unlawfully changed" her "'race' . . . from a Shoshone Utah Indian to that of an 1880 Colorado Confederate state Ute citizen." *Id.* at 20. Similarly, she alleges that the "Shoshone Utah Indians of the 1861 Uinta(h) Reservation were unlawfully classified as the 'Final Mixed Blood Ute Roll.'" *Id.* at 25 (italicization and underlining omitted). Ultimately, Ms. Hackford argues that "[t]his has always been about gaining control of the . . . Shoshone Utah Indians' wealth through the unlawful actions of the Appellees, and Utah's Mormons' [sic] under Secretary of the Interior, Stewart Udall." *Id.* at 28.

Notwithstanding Ms. Hackford's detailed and lengthy allegations, we agree with the district court that Ms. Hackford has failed to state any cognizable claim for relief. Although the UPA afforded Ms. Hackford an avenue to challenge the determination that she was a mixed-blood member of the Ute Indian Tribe, the statutory window for doing so has long since closed. *See*, *e.g.*, *Vasquez Arroyo v. Starks*, 589 F.3d 1091, 1097 (10th Cir. 2009) (explaining that a district court may sua sponte dismiss IFP complaint on statute-of-limitations grounds if "it is clear from the face of the complaint that there are no meritorious tolling issues, or the court has provided the plaintiff notice and an opportunity to be heard on the issue" (emphasis added)). Aside from the UPA, Ms. Hackford has failed to identify, and we likewise

7

are unaware of, a federal statute that would allow her to bring a claim for the relief she seeks in her amended complaint against the named defendants.[3]

III

The judgment of the district court is affirmed.

Entered for the Court

Joel M. Carson III<br>Circuit Judge

---

[3] This is not Ms. Hackford's first attempt at seeking relief related to the UPA. In 2011, she and several other plaintiffs, including an individual who later filed the action that led to our decision in *Hackford 2020*, sought "a restraining order or preliminary injunction" on the grounds "that the [UPA] was fraudulently enacted and that unspecified rights of theirs [we]re being violated by the Corporation of the President of the Church of Jesus Church of Latter-day Saints." *Hackford v. Utah*, 446 F. App'x 988, 988 (10th Cir. 2011). We affirmed the denial of relief in that case. *Id.* at 989.