FILED
United States Court of Appeals
Tenth Circuit

April 26, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ANDRE L. MARSHALL,

      Plaintiff-Appellant,

v.

DEBBIE MORTON, Administrative
Review Authority; JUSTIN JONES,
Director; JOSEPH TAYLOR, Warden;
MS. WATERS, Disciplinary Hearing
Officer; OFFICER FONSECA,
Correctional Officer; DONALD
STEER, Chief of Security,

      Defendants-Appellees.

No. 10-6284

(D.C. No. 5:10-CV-00082-C)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE,** Chief Judge, **ANDERSON** and **MURPHY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is,

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

therefore, submitted without oral argument.

Andre L. Marshall, an Oklahoma state prisoner incarcerated at the Cimarron Correctional Facility (CCF) proceeding pro se, filed a 42 U.S.C. § 1983 complaint in the United States District Court for the Western District of Oklahoma against officials at the CCF (CCF Defendants)[1] and officials at the Oklahoma Department of Corrections (ODOC) (ODOC Defendants)[2]. In his complaint, Marshall alleged that the defendants violated his constitutional rights as well as Oklahoma state law in connection with his inmate disciplinary proceedings. The district court, adopting the magistrate judge's findings and recommendations, dismissed Marshall's constitutional claims with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) and dismissed his remaining state law claims without prejudice.

Marshall filed a notice of appeal and a motion for leave to proceed in forma pauperis on appeal in the district court. The district court denied Marshall's motion for leave to proceed in forma pauperis on appeal pursuant to 28 U.S.C. §

---

[1] The CCF Defendants included: (1) Joseph Taylor, the warden at the CCF; (2) Donald Steer, the chief of security at the CCF; and (3) Ms. Waters, a disciplinary hearing officer at the CCF. ROA, Vol. 1 at 5–6. Because the CCF is owned and operated by Corrections Corporation of America, Inc. (CCA), id. at 42, these defendants are employees of CCA. Marshall's complaint also identified Officer Fonseca, a former correctional officer at CCF, as a defendant. Id. at 5. However, Marshall failed to effect service on Officer Fonseca.

[2] The ODOC Defendants included: (1) Justin Jones, the director of ODOC; and (2) Debbie Morton, the "Administrative Review Authority" for ODOC. ROA, Vol. 1 at 5–6.

1915(a)(3), concluding that his appeal was not taken in good faith. Marshall appeals the district court's decision dismissing his claims and renews his request for leave to proceed in forma pauperis. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the dismissal of Marshall's claims and deny his request for leave to proceed in forma pauperis.

## I. BACKGROUND

Marshall is an Oklahoma state prisoner incarcerated at the CCF serving a sentence subject to the "85% rule" under Okla. Stat. tit. 21, § 13.1. ROA, Vol. 1 at 156. Because his sentence is subject to the 85% rule, Marshall is "not . . . eligible for earned credits or any other type of credits which have the effect of reducing the length of the sentence to less than eighty-five percent (85%) of the sentence imposed," Okla. Stat. tit. 21, § 13.1. ROA, Vol. 1 at 156–57.

Marshall filed a pro se complaint pursuant to 42 U.S.C. § 1983 in the United States District Court for the Western District of Oklahoma, asserting that the defendants violated his constitutional rights as well as Oklahoma law in connection with his inmate disciplinary proceedings for his alleged possession of a cellular phone. ROA, Vol. 1 at 5–18. The matter was referred to a magistrate judge for initial proceedings. The magistrate judge granted Marshall's motion for leave to proceed in forma pauperis and ordered defendants to prepare a special report pursuant to Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978). ROA, Vol. 1 at 37–40.

3

The first event that is relevant to this § 1983 action was the filing of inmate misconduct charges against Marshall based on his alleged possession of a contraband cellular phone at the CCF. According to the incident statement Officer Fonseca prepared, Officer Fonseca was conducting a security check on August 24, 2009 when he observed Marshall lying on the floor of another inmate's cell. Id. at 55. Officer Fonseca explained that, when he investigated further, he discovered Marshall had a cellular phone in his possession. Id. However, according to Officer Fonseca, Marshall passed the cellular phone to other inmates before it could be seized. Id.

Marshall was immediately placed in segregation pending an investigation. Id. at 19. On September 16, 2009, an offense report charging Marshall with possession of a cellular phone was issued. Id. at 26. On September 21, 2009, Marshall received copies of the incident report, the offense report, an investigator's report and witness discretionary action records. Id. at 59. The investigator's report noted that Marshall "wish[ed] to call witness/es" to testify that the surveillance video of the incident established that a cellular phone was not present. Id. at 56. However, because both of the witnesses Marshall identified provided statements that the incident was not captured on surveillance video, Marshall's witnesses were disqualified. Id. at 57–58.

Marshall remained in segregation pending his disciplinary hearing. On September 29, 2009, CCF Defendant Waters conducted Marshall's disciplinary

4

hearing.  Id. at 60.  Marshall was adjudged guilty of "Individual Disruptive Behavior" for his possession of a cellular phone.  Id.  Marshall's sanctions included: (1) placement in segregation for thirty days; (2) loss of three hundred and sixty-five earned credits; and (3) reduction of his inmate classification level from level two to level one for ninety days.  Id.

Marshall appealed this misconduct conviction.  Id. at 61.  CCF Defendant Taylor performed a due process review of Marshall's disciplinary proceedings and affirmed the conviction.  Id. at 63.  Marshall then appealed his conviction to ODOC.  Id. at 67.  ODOC Defendant Morton declined to consider the appeal, explaining:

> You are serving an 85% sentence and are therefore ineligible to receive earned credits until 7/8/2018.  As you are ineligible to receive earned credits, you are not entitled to a due process review.  In accordance with the law of Oklahoma your sentence is not eligible for earned credits and based on Wolff v. McDonald [sic] due process is only required when earned credits that have been earned are revoked.

Id. at 68.

In his 42 U.S.C. § 1983 complaint, Marshall alleged that these disciplinary proceedings violated his due process rights, violated his right to equal protection, and contravened Oklahoma law.  Id. at 6.  With regard to his due process claim, Marshall identified numerous deficiencies in his disciplinary proceedings.[3]  Id. at

_____

[3] Specifically, Marshall explained that: (1) exculpatory evidence was purposefully withheld; (2) he was held in segregation for a period longer than that
(continued...)

5

10–13. For his equal protection claim, Marshall asserted that, as an inmate serving a sentence subject to the 85% rule, he was denied an ODOC due process review, while other inmates are afforded this review. Id. at 14–15. As concerned his state law claims, Marshall alleged that ODOC Defendant Morton's refusal to consider his appeal involved abuse of power, negligence, deliberate indifference and willful deceit. Id. at 15. Based on these claims, Marshall requested compensatory and punitive damages and injunctive and declaratory relief. Id. at 17.

CCF Defendants filed a motion to dismiss Marshall's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Id. at 92–101. CCF Defendants asserted that Marshall failed to establish a due process claim because: (1) his disciplinary proceedings satisfied the requirements of Wolff v. McDonnell, 418 U.S. 539 (1974); and (2) his disciplinary proceedings did not implicate a protected liberty interest. ROA,

---

[3](...continued)
permitted by ODOC policy and procedure; (3) there was no evidence of his misconduct; (4) he was not advised of his Miranda rights; (5) he was not permitted to call witnesses on his behalf or confront his accusers; (6) the disciplinary hearing officer "served as the hearing officer, prosecutor, Judge, and jury"; (7) CCF Defendant Taylor failed to timely affirm, modify, or dismiss the disciplinary action in accordance with ODOC policy and procedure; and (8) the hearing was postponed without him receiving written notice in accordance with ODOC policy and procedure. Id. at 10–11. Marshall also asserted that the ODOC administrative review authority declined to consider his appeal because he was ineligible to receive earned credits. Id. at 11–13.

Vol. 1 at 93–97. Further, with regard to all of Marshall's claims, CCF Defendants contended that Marshall failed to properly exhaust his administrative remedies. Id. at 97–101.

ODOC Defendants filed a combined motion to dismiss the complaint pursuant to Rule 12(b)(6) and for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 56. Id. at 176–90. ODOC Defendants asserted that Marshall failed to state a claim for denial of due process or equal protection based on ODOC's alleged failure to conform to its own policies and procedures; that Marshall received all of the process to which he was due, failed to exhaust his administrative remedies, and failed to establish an affirmative link between ODOC Defendants and any unconstitutional act; that any action against ODOC Defendants in their official capacities was barred by the Eleventh Amendment; that Marshall failed to state a claim for negligence under Oklahoma law; and that ODOC Defendants were entitled to qualified immunity. Id.

The magistrate judge recommended that the district court grant ODOC Defendants' and CCF Defendants' motions to dismiss, dismiss Marshall's due process and equal protection claims with prejudice, and dismiss his state law claims without prejudice. Id. at 198. As a preliminary matter, the magistrate judge asserted that Marshall's "claim for damages [was] not cognizable under [42 U.S.C.] § 1983" based on Heck v. Humphrey, 512 U.S. 477 (1994), and Edwards v. Balisok, 520 U.S. 641, 648 (1997). ROA, Vol. 1 at 202–03. However, because

7

the defendants did not raise this issue, the magistrate judge proceeded to consider "the other grounds raised in the motions to dismiss." Id. at 203.

With regard to the due process claim, the magistrate judge determined that Marshall failed to allege facts showing that his disciplinary proceedings implicated a protected liberty interest. Id. at 204–09. As a result, the magistrate judge reasoned that Marshall received all of the process to which he was due. Id. at 204. In the alternative, assuming that a protected liberty interest had been implicated, the magistrate judge explained that Marshall's disciplinary proceedings satisfied the due process requirements established in Wolff and Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985). ROA, Vol. 1 at 209–10. As far as the equal protection claim, the magistrate judge determined that Marshall failed to adequately challenge the "legitimate penological purpose" for the alleged different treatment inmates serving sentences subject to the 85% rule received as compared to other inmates. Id. at 211–12. After recommending the dismissal of the due process and equal protection claims with prejudice, the magistrate judge recommended that the district court decline to exercise its supplemental jurisdiction over the remaining state law claims and dismiss these claims without prejudice. Id. at 212.

Despite Marshall's objections, the district court adopted the magistrate judge's findings and recommendations. Id. at 218–19. As a result, the district court dismissed Marshall's due process and equal protection claims with prejudice

and dismissed his state law claims without prejudice. Id. at 220. Marshall filed a notice of appeal and a motion for leave to proceed in forma pauperis on appeal in the district court. Id. at 221. The district court denied Marshall's motion for leave to proceed in forma pauperis on appeal pursuant to 28 U.S.C. § 1915(a)(3), concluding that his "appeal [was] not taken in good faith." Id. at 234. Marshall appeals the district court's decision dismissing his claims and renews his request for leave to proceed in forma pauperis.

## II. ANALYSIS

On appeal, Marshall asserts that the district court improperly dismissed his due process and equal protection claims. Further, because the district court erroneously dismissed his federal claims, Marshall contends that the district court should not have declined to exercise its supplemental jurisdiction over his state law claims. We affirm the district court's decision to dismiss Marshall's due process and equal protection claims with prejudice.[4] As a result, we also affirm the district court's decision to dismiss his state law claims without prejudice.

---

[4] While the magistrate judge also determined that Marshall's "claim for damages" should be dismissed pursuant to Heck and Edwards, we decline to consider this issue. See Jiron v. City of Lakewood, 392 F.3d 410, 413 n.1 (10th Cir. 2004) (noting that Heck is not jurisdictional). Because the district court dismissed Marshall's equal protection and due process claims with prejudice, and because Heck would at best only support a dismissal without prejudice, we will analyze the substance of Marshall's claims. See id.

*A. Standard of review.*

"We review de novo a district court's decision on a Rule 12(b)(6) motion for dismissal for failure to state a claim."[5] Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007). When reviewing a Rule 12(b)(6) motion to dismiss, "we look for plausibility in the complaint." Kay v. Bemis, 500 F.3d 1214, 1218 (10th Cir. 2007) (internal quotation marks and brackets omitted). "In particular, we look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." Id. (internal quotation marks omitted). "Rather than adjudging whether a claim is 'improbable,' '[f]actual allegations [in a complaint] must be enough to raise a right to relief above the speculative level.'" Id. (alterations in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007)).

Because Marshall is proceeding pro se, "we must construe . . . [his] complaint liberally," id. (internal quotation marks omitted). Nonetheless, parties proceeding pro se are "not relieve[d] . . . of the burden of alleging sufficient facts on which a recognized legal claim could be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

---

[5] As Marshall had been proceeding in forma pauperis before the district court, the district court could have considered the adequacy of his complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Regardless, "[w]e apply the same standard of review for dismissals under § 1915(e)(2)(B)(ii) that we employ for . . . Rule . . . 12(b)(6) motions to dismiss for failure to state a claim." Kay v. Bemis, 500 F.3d 1214, 1217 (10th Cir. 2007).

10

*B. Due process.*

Marshall contends that CCF Defendants and ODOC Defendants violated his due process rights during his disciplinary proceedings. We agree with the magistrate judge's determination that Marshall failed to allege sufficient facts to establish that his disciplinary proceedings implicated a protected liberty interest. Thus, we conclude that the district court properly dismissed Marshall's due process claim with prejudice.

"The Fourteenth Amendment prohibits states from depriving citizens of liberty without due process of law." Wilson v. Jones, 430 F.3d 1113, 1117 (10th Cir. 2005). Although this guarantee applies to prison inmates, "prisoners' due process rights are defined more narrowly." Id. In the prison context, the Supreme Court has established that protected liberty interests are at issue when the prison inmate is subjected to: (1) conditions that "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or (2) disciplinary actions that "inevitably affect the duration of his sentence." Sandin v. Conner, 515 U.S. 472, 484, 487 (1995); see also Wilson, 430 F.3d at 1117. When a protected liberty interest is implicated, procedural due process requires that a prison inmate facing a disciplinary hearing be provided:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

11

<u>Hill</u>, 472 U.S. at 454; <u>see also</u> <u>Mitchell v. Maynard</u>, 80 F.3d 1433, 1445 (10th Cir. 1996). In addition, the results from the prison disciplinary hearing must be supported by "some evidence in the record." <u>Hill</u>, 472 U.S. at 455–56. Because we conclude that Marshall's disciplinary proceedings did not implicate a protected liberty interest, we need not address the procedural deficiencies Marshall asserts or evaluate whether Marshall received adequate procedural due process.

Marshall contends that his disciplinary proceedings implicated a protected liberty interest because: (1) his inmate classification level was reduced from level two to level one; (2) his misconduct conviction could negatively affect his parole consideration; and (3) ODOC policies and procedures were not followed. This court will consider each of these assertions in turn.

First, Marshall argues that the reduction to his inmate classification level implicated a protected liberty interest. He explains that an inmate's classification level controls not only the number of earned credits an inmate receives, but also an inmate's eligibility for "numerous other things." ROA, Vol. 1 at 13. Specifically, Marshall identifies that the change to an inmate's classification level reduces the amount of monthly income he receives and results in the loss of an assortment of privileges. <u>Id.</u> at 11, 13.

We conclude that the reduction to Marshall's inmate classification level did not implicate a protected liberty interest. This court has previously concluded

12

that a mandatory reduction in the rate at which a prisoner earns good time credits based on a misconduct conviction implicates a prisoner's protected liberty interest by "'inevitably affect[ing] the duration of his sentence.'" Wilson, 430 F.3d at 1120 (quoting Sandin, 515 U.S. at 487). However, even assuming the reduction to his inmate classification level was mandatory as a result of his misconduct conviction, the fact that this change reduced the rate at which Marshall could receive earned credits had no effect on the duration of his sentence. Marshall's sentence was subject to the 85% rule and, as a result, he was ineligible to receive earned credits. In fact, recognizing that he was not entitled to receive earned credits, Marshall explained that he "[was] not basing his entitlement to due process upon a claim related to earned credits." ROA, Vol. 1 at 12. Thus, the reduction to his inmate classification level did not implicate a protected liberty interest in this regard.

The privileges Marshall lost as a result of the reduction to his inmate classification level also did not constitute protected liberty interests because they did not impose "atypical and significant hardship[s] on [him] in relation to the ordinary incidents of prison life," Sandin, 515 U.S. at 484. Specifically, restrictions on an inmate's telephone use, property possession, visitation and recreation privileges are not different in such degree and duration as compared with the ordinary incidents of prison life to constitute protected liberty interests under the Due Process Clause. Further, this court has previously held that

13

prisoners do not have a protected liberty interest in prison employment. <u>See</u> <u>Penrod v. Zavaras</u>, 94 F.3d 1399, 1407 (10th Cir. 1996).

Second, the possibility that Marshall's misconduct conviction could have a negative impact on his parole consideration did not implicate a protected liberty interest. As the Supreme Court explained in <u>Sandin</u>, "[t]he decision to release a prisoner rests on a myriad of considerations." 515 U.S. at 487. Thus, even though a parole board may consider an inmate's misconduct convictions as a relevant consideration when deciding whether to grant parole, "[t]he chance that [this] finding . . . will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause," <u>id.</u>

Third, Marshall contends that the failure to follow ODOC policies and procedures during his disciplinary proceedings implicated a protected liberty interest. He identifies that: (1) CCF Defendant Taylor failed to timely affirm his conviction pursuant to ODOC policy and procedure; (2) his disciplinary hearing was postponed without him receiving written notice in accordance with ODOC policy and procedure; and (3) he was held in segregation "for about 35 days longer than he should have been" according to ODOC policy and procedure. The Supreme Court has explained that "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." <u>Sandin</u>, 515 U.S. at 483–84. However, Marshall failed to allege sufficient facts to show that the deviations from ODOC policy and procedure he identifies imposed atypical

14

and significant hardships on him in relation to the ordinary incidents of prison life or inevitably affected the duration of his sentence. See id. at 486 (concluding that placement in disciplinary segregation for thirty days "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest" because the conditions mirrored those of administrative segregation); cf. Fogle v. Pierson, 435 F.3d 1252, 1259 (10th Cir. 2006) (concluding that a prisoner's confinement for "a three-year period on administrative segregation-during which time [he] was confined to his cell for all but five hours each week and denied access to any outdoor recreation-" was arguably atypical). Based on the allegations in his complaint, we conclude that Marshall's disciplinary proceedings did not implicate a protected liberty interest. Thus, the district court properly dismissed his due process claim with prejudice.

*C. Equal protection.*

Marshall argues that ODOC's refusal to review his misconduct conviction due to his ineligibility to receive earned credits violated his equal protection rights. Specifically, he contends that ODOC treats inmates subject to the 85% rule differently than other inmates. Because we agree with the magistrate judge's determination that Marshall failed to allege facts challenging the legitimate penological purposes for the different treatment, we affirm the district court's decision to dismiss the equal protection claim with prejudice.

To prevail on an equal protection claim, a plaintiff must show that the

15

government has treated him differently than others who were similarly situated. See Penrod, 94 F.3d at 1406. When the different treatment is not based on a suspect classification, the plaintiff must also allege sufficient facts to establish that "the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose." Templeman v. Gunter, 16 F.3d 367, 371 (10th Cir. 1994). Marshall did assert that inmates ineligible to receive earned credits were treated differently than other inmates. However, as the magistrate judge reasoned, inmates subject to the 85% rule are convicted of "particularly serious crimes," and Marshall did not challenge the legitimate penological purposes for treating these inmates differently. ROA, Vol. 1 at 211–12. Marshall's conclusory allegations on appeal that the distinction "was never part of a 'legitimate penological purpose'", Aplt. Br. at 7, are inadequate to state an equal protection claim. Thus, we affirm the district court's decision to dismiss his equal protection claim with prejudice.

### III. MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS

We also consider Marshall's renewed motion for leave to proceed in forma pauperis. Marshall first filed this motion in the district court, and the district court denied his request concluding that the appeal "[was] not taken in good faith." ROA, Vol. 1 at 234. We agree with the district court.

To proceed in forma pauperis on appeal, Marshall must show "the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues

16

raised on appeal." <u>DeBardeleben v. Quinlan</u>, 937 F.2d 502, 505 (10th Cir. 1991).

An appeal on a matter of law is frivolous where "[none] of the legal points [are]

arguable on the merits." <u>Anders v. California</u>, 386 U.S. 738, 744 (1967).

Marshall's arguments on appeal are contrary to settled law, and he makes no

reasoned argument for modification of that law. Thus, Marshall has not presented

reasoned, nonfrivolous arguments in support of the issues raised on appeal.

## IV. CONCLUSION

We affirm the district court's decision to dismiss Marshall's due process

and equal protection claims with prejudice. Because the district court properly

dismissed Marshall's federal claims, we affirm the district court's decision

declining to exercise supplemental jurisdiction over the remaining state law

claims and dismissing these claims without prejudice. Further, we deny

Marshall's renewed motion for leave to proceed in forma pauperis.


Entered for the Court


Mary Beck Briscoe
Chief Judge

17