**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 1, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES COURT OF APPEALS

TENID CIRCUIT

---

JOE JERRY HARRISON,

Plaintiff-Appellant,

v.

DEBBIE MORTON, ROBERT KING,
ROBERT EZELL, and SERGEANT
WILSON,

Defendants-Appellants.

No. 12-7025

(E.D. of Okla.)

(D.C. No. CV-11-00043-RAW-SPS)

---

ORDER AND JUDGMENT[*]

---

Before **KELLY**, **TYMKOVICH**, and **GORSUCH**, Circuit Judges.[**]

---

Joe Jerry Harrison, an Oklahoma state prisoner proceeding pro se,

challenges an order of the district court dismissing Harrison's complaint brought

pursuant to 42 U.S.C. § 1983. Harrison was convicted of a prison disciplinary

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge
panel has determined unanimously that oral argument would not be of material
assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th
Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

violation in a proceeding which he claims violated the Due Process Clause of the Fourteenth Amendment.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the dismissal of Harrison's claims.

## I. Background

Harrison is an inmate in custody of the Oklahoma Department of Corrections (ODOC) at the Davis Correctional Facility (DCF). Harrison is serving an 85% sentence, which means that under Oklahoma law, he is ineligible for parole and cannot earn good time credits until he has served 85% of his sentence.[1] On May 15, 2010, ODOC Unit Manager Robert King conducted a shakedown of Harrison's cell and found a sharpened ten-inch piece of wood hidden in a light fixture.[2] Harrison was not allowed to observe the search.

Harrison was charged with Possession/Manufacture of Contraband, a Class X misconduct offense. On May 21, 2010, Harrison was given an offense report, a staff statement, and a photocopy of a picture of the sharpened stick.

On May 24, 2010, Harrison appeared at a disciplinary hearing conducted by Sergeant Wilson, the DCF Disciplinary Hearing Officer. Harrison and Sgt.

---

[1] Okla. Stat. tit. 21, § 13.1. Harrison will have served 85% of his sentence and become eligible for earned credits in 2018.

[2] Harrison claimed he did not know the object was in the light fixture and did not place it there. He also argued that when he was transferred to the cell, he requested to have it searched but was denied.

Wilson were the only individuals at the hearing. Harrison complains that the actual evidence was not present at the hearing, only a poor-quality photograph. He also claims he was not allowed to confront his accuser or call witnesses on his behalf. But the Investigator's Report, which Harrison signed, indicated he did not want to present witnesses. In addition, an ODOC special report writer reviewed the audio recording of the hearing and stated in an affidavit that Harrison did not ask to confront his accuser or request the presence of any live witnesses at the hearing, nor did he seek to introduce any documentary evidence. Harrison was found guilty and penalized with the loss of 365 earned credits, 90 days on Level 1, 30 days in segregation, and mandatory security points. Harrison did not actually lose any earned credits because, as discussed previously, he is currently ineligible to earn good time credits until 2018.

Harrison administratively appealed his disciplinary conviction, arguing he was denied due process at his disciplinary hearing. DCF Warden Robert Ezell reviewed and affirmed Harrison's conviction, finding Harrison received due process. He provided Harrison with a memo responding to his claims. Harrison then appealed his conviction to the ODOC's Administrative Review Authority (ARA). The ARA declined to review Harrison's appeal, stating that because Harrison did not lose any earned credits as a result of his disciplinary conviction, it was unable to undertake a due process review of his conviction.

Harrison then filed suit in federal court under § 1983, seeking damages and declaratory and injunctive relief for the alleged denial of his rights to due process and equal protection. Defendant Debbie Morton of the ARA filed a motion for summary judgment, and the other defendants filed a motion to dismiss Harrison's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The district court granted both motions. This appeal followed.[3]

## II. Discussion

We review de novo the district court's ruling on a motion to dismiss for failure to state a claim. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). "We must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Id.* (quoting *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)). But we also must consider whether the allegations in the complaint are plausible. *Id.*

Because Harrison is proceeding pro se, we will construe his pleadings liberally. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But Harrison still has the duty to allege sufficient facts to serve as the basis for his claims. *Id.*

---

[3] Before considering the merits of Harrison's claims on appeal, we note that in response to the two briefs filed separately by Morton and the other defendants, Harrison filed two reply briefs. After being informed of Federal Rule of Appellate Procedure 28(c)'s rule limiting an appellant to a single reply brief, Harrison filed a motion asking us to consider both briefs. Although we note Harrison repeats many of his arguments in both briefs, we grant his motion.

In the absence of sufficiently specific allegations, it is not the court's duty to assume the role of advocate for the pro se litigant. *Id*.

### A. Timeliness of Harrison's § 1983 Claims

Harrison's first claim is that the district court misapplied the law by holding his § 1983 claims were premature under the *Heck* doctrine. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). *Heck* held that a prisoner's claim for damages is not cognizable under § 1983 if a judgment in the plaintiff's favor would imply the invalidity of his conviction or sentence. *Id*. A prisoner can evade this prohibition only by showing his conviction or sentence has been overturned or otherwise invalidated. *Id*. This rule is also applicable to prison disciplinary convictions. *Edwards v. Balisok*, 520 U.S. 641, 643 (1997). As Harrison did not show his prison disciplinary conviction had been invalidated, the district court found his § 1983 claims were barred by *Heck*.

Harrison argues the district court's decision ignores *Muhammad v. Close*, 540 U.S. 749 (2004) (per curiam). *Muhammad* addressed the applicability of *Heck* and *Edwards* to a § 1983 suit challenging a prisoner's segregation prior to a disciplinary hearing where he was acquitted of the charged offense and thus lost no earned credits. *Id*. at 751. *Muhammad* held *Heck* does not bar a prisoner's § 1983 suit when a favorable verdict would not affect his conviction or the duration of his sentence. *Id*. at 751–52.

In reaching this holding, the Court clarified "that the incarceration that matters under *Heck* is the incarceration ordered by the original judgment of conviction, not special disciplinary confinement for infraction of prison rules." *Id*. at 751 n.1. Because the petitioner in *Muhammad* lost no good-time credits as a result of the challenged action, his § 1983 suit "could not therefore be construed as seeking a judgment at odds with his conviction or . . . time to be served in accordance with the underlying sentence." *Id*. at 754–55. Stating its holding another way, the Court found that because the petitioner raised no claim on which habeas relief could have been granted, "*Heck's* favorable termination requirement was inapplicable." *Id*. at 755.

Harrison claims *Heck* does not bar his claims in light of *Muhammad*, but he misinterprets that decision. *Muhammad* held *Heck* is inapplicable only when a prisoner's § 1983 suit does not threaten his "*conviction* or the duration of his sentence." *Id*. at 751 (emphasis added). In *Butler v. Compton*, 482 F.3d 1277, 1280 (10th Cir. 2007), we held the conviction that matters under *Muhammad* and *Heck* is the conviction tied "to the conduct alleged in the § 1983 action." The conduct Harrison challenges relates to his disciplinary conviction, not his original criminal conviction. Harrison is correct that his § 1983 suit does not threaten the duration of his underlying sentence, but it does threaten the validity of his disciplinary conviction. Thus it would appear *Muhammad* does not bar the application of *Heck* to Harrison's § 1983 claims.

But there is another wrinkle. *Muhammad* left open the possibility that *Heck* might not apply when a habeas remedy is unavailable. 540 U.S. at 752 n.2. Harrison likely would not be able to file a habeas petition challenging his disciplinary conviction. We have held that a habeas petition under 28 U.S.C. § 2241 is available to challenge prison disciplinary proceedings only when those proceedings affect "the fact or duration of the petitioner's custody," such as when a prisoner is deprived of earned credits. *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811–12 (10th Cir. 1997).

Harrison's conviction, because it has no bearing on the fact or duration of his confinement, does not qualify. But we need not decide whether *Heck* would bar Harrison's § 1983 claims in the absence of a habeas remedy because even if his claims are allowed to proceed, Harrison cannot demonstrate that his constitutional rights were violated.

## B. Due Process

Harrison claims the defendants violated his due process rights during his disciplinary proceedings. We agree with the district court that Harrison failed to establish his proceedings implicated a protected liberty interest. Thus we conclude the district court properly dismissed his due process claim.

"The Fourteenth Amendment prohibits states from depriving citizens of liberty without due process of law." *Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005). This guarantee applies to prison inmates, but "[p]rison disciplinary

-7-

proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The Supreme Court has established that protected liberty interests are at issue in the prison setting only when an inmate is subjected to (1) conditions that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or (2) disciplinary actions that "inevitably affect the duration of his sentence." *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

If a protected liberty interest is implicated, the following procedures must be provided in a prison disciplinary hearing:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985). The results of the disciplinary hearing must also be supported by "some evidence in the record." *Id*. at 454. Harrison's disciplinary hearing did not implicate a protected liberty interest, so he was not entitled to procedural due process.[4]

---

[4] Even if Harrison was entitled to procedural due process, he received all the process due under *Hill*. 472 U.S. at 454. He was given a written notice of the disciplinary charges three days before his hearing, was given the opportunity to present evidence and call witnesses but declined to do so, and was given a written statement of the evidence relied on and the reasons for his conviction. *Id*. His conviction was also supported by some evidence, including Unit Manager King's

(continued...)

Harrison acknowledges his disciplinary conviction did not deprive him of earned credits and thus did not affect the duration of his sentence. But he argues it imposed atypical and significant hardships on him because it negatively impacted his security classification, resulting in a reduction in his monthly pay and a loss of many privileges. He also claims it will negatively affect his parole consideration. Harrison further argues that ODOC policies and Oklahoma law created an additional liberty interest by establishing a statutory right to administratively appeal disciplinary convictions. *See* Okla. Stat. tit. 57, § 566.3(G); OP-060125.

This court recently considered and rejected the same arguments Harrison raises regarding his security classification and eligibility for parole. *See Marshall v. Morton*, 421 F. App'x 832, 837–38 (10th Cir. 2011). In *Marshall*, we concluded a reduction in an inmate's security classification did not implicate a liberty interest for inmates serving an 85% sentence even though it reduces the rate at which inmates earn good-time credits because 85%-rule inmates are ineligible to receive earned credits. *Id*. at 838. In addition, we concluded the other privileges lost with a reduced security classification, such as reduced pay or

---

[4](...continued)
statement that he found a sharpened stick hidden in Harrison's cell, as well as a photo of the weapon. *Id*. at 455–56. Harrison claims Warden Ezell should not have applied the "some evidence" standard in his administrative appeal, but the case he cites for this proposition is not binding in this circuit and, in any case, applies only when a disciplinary conviction affects an inmate's supervised release date. *See Carrillo v. Fabian*, 701 N.W.2d 763, 777 (Minn. 2005).

-9-

restrictions on recreational privileges, did not impose an atypical hardship compared to the normal incidents of prison life. *Id.*; *see also Penrod v. Zavaras*, 94 F.3d 1399, 1407 (10th Cir. 1996) (holding an inmate has no protected liberty interest in prison employment). And we held the possibility a disciplinary conviction will negatively impact an inmate's parole consideration to be "too attenuated" and based on too many other considerations to constitute a protected liberty interest. *Marshall*, 421 F. App'x at 838 (citing *Sandin*, 515 U.S. at 487). We find *Marshall's* reasoning persuasive and adopt it here.

Harrison also fails to establish that ODOC policy and Oklahoma law create a liberty interest in his right to an administrative appeal. Prison disciplinary procedures do not create constitutionally protected liberty interests. *Crowder v. True*, 74 F.3d 812, 814–15 (7th Cir. 1996) (citing *Sandin*, 515 U.S. at 484). And though states may sometimes create liberty interests protected by the due process clause, these interests are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Even assuming Okla. Stat. tit. 57, § 566.3(G) created a liberty interest in "freedom from restraint which . . . imposes atypical and significant hardship," *Sandin*, 515 U.S. at 484, Harrison has failed to show that deviations from this law and policies created pursuant to it imposed atypical or significant hardships on him, or inevitably affected the duration of his sentence. He alleges the ARA's

refusal to review his appeal prevented him from exhausting his administrative remedies and precluded him from pursuing his claims in court, but Harrison is not required to have his appeal actually reviewed by the ARA to exhaust his administrative remedies. All he has to do is request such review and "see the process to its conclusion." *See Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). It appears Harrison did so in this case, which is why the district court did not reject his complaint on exhaustion grounds.

Harrison has not established that a protected liberty interest was implicated in his disciplinary proceedings. Thus even if his § 1983 claim for damages arising from the denial of due process is not barred by *Heck*, the district court's dismissal of it was proper.

### C. Equal Protection

Harrison also argues that the ARA's refusal to review his disciplinary conviction due to his ineligibility to receive earned credits violated his Fourteenth Amendment right to equal protection. He alleges ODOC treats inmates serving 85% sentences differently than other inmates. To prevail on an equal protection claim, a plaintiff must show the government treated him differently than others who were similarly situated. *Penrod*, 94 F.3d at 1406. If the difference in treatment is not based on a suspect classification, the plaintiff must also allege facts sufficient to establish "the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose." *Templeman*

*v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994).  The district court observed that inmates subject to the 85% rule have been convicted of particularly serious crimes, and found Harrison failed to challenge the legitimate penological justification for treating these inmates differently.

Harrison claims he challenged the penological purpose for treating 85%-rule inmates differently in the context of a disciplinary hearing.  But his only arguments on this point are (1) that inmates who violate the same disciplinary provision should be treated in the same manner, and (2) there is no valid distinction between an inmate serving a 40-year sentence who is subject to the 85% rule and an inmate who is serving five consecutive twenty-year sentences and is not subject to the 85% rule.  But there is a valid distinction between these inmates, and it was articulated by the district court: inmates subject to the 85% rule have been convicted of particularly serious crimes.  *See* Okla. Stat. tit. 21, § 13.1 (subjecting persons convicted of murder, first-degree rape, aggravated child molestation, and so on to the 85% rule).  Harrison simply points out that these inmates are treated differently; his arguments do not challenge the reasons underlying this disparate treatment, except to say they are not valid.  As we held when considering similar claims in *Marshall*, this is inadequate to state an equal protection claim.  421 F. App'x at 839.

## D. *Declaratory and Injunctive Relief*

In addition to his § 1983 claims, Harrison sought declaratory and injunctive relief on the grounds his due process and equal protection rights were violated by the ARA's refusal to review his appeal. The district court found Harrison was not entitled to an injunction unless he could demonstrate that his constitutional rights were actually violated. *Rizzo v. Goode*, 423 U.S. 362, 377 (1976). The district court found Harrison failed to state a claim that either his due process or equal protection rights were violated, so the court found he was not entitled to an injunction. As we also conclude Harrison failed to state a claim that either his due process or equal protection rights were violated, we affirm the district court's denial of injunctive and declaratory relief.

# III. Conclusion

For the foregoing reasons, we AFFIRM the order of the district court dismissing Harrison's petition. We DENY Harrison's motion seeking an exception. In addition, we remind Mr. Harrison that he must continue making partial payments until the entire balance of his appellate filing fee is paid.

Entered for the Court,

Timothy M. Tymkovich
Circuit Judge