**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DANNY DEWAYNE BREWER,

    Plaintiff - Appellant,

v.

DEANA GILROY, Sergeant; FNU
PAVLUKEVICK, Corrections Officer;
JIMMY MARTIN, Warden's
Administrative Assistant; ART LIGHTLE,
Deputy Warden; TERRY CRENSHAW;
WILLIAM TAYLOR; JUSTIN JONES;
MARK KNUTSON; SHEARWOOD;
PARKER; CAPTAIN RIDDLE; KEN
YOTT; RANDY KNIGHT; OFFICER
PINLEY,

    Defendants - Appellees.

No. 15-7027
(D.C. No. 6:13-CV-00471-RAW-SPS)
(E.D. Oklahoma)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **LUCERO**, and **McHUGH**, Circuit Judges.
_____

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination of

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Rule 32.1 of the Federal Rules of Appellate
Procedure and Tenth Circuit Rule 32.1.

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Danny Dewayne Brewer, an Oklahoma State prisoner proceeding pro se,[1] appeals the district court's dismissal of his 42 U.S.C. § 1983 complaint, in which he alleges that prison officials violated his constitutional rights. Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

## I. BACKGROUND

This case arises out of Mr. Brewer's complaint, filed in the United States District Court for the Eastern District of Oklahoma, seeking relief pursuant to 42 U.S.C. § 1983 for alleged constitutional violations that occurred during Mr. Brewer's incarceration in the custody of the Oklahoma Department of Corrections (ODOC).

Mr. Brewer's complaint alleges that while he was incarcerated in the Davis Correctional Facility (DCF), Corrections Officer Sergeant Deanna Gilroy repeatedly sexually assaulted him in violation of his Eighth Amendment rights. Mr. Brewer filed a grievance with DCF setting forth his claims of sexual abuse against Defendant Gilroy and requesting that "[Defendant] Gilroy . . . be investigated and the witnesses that I mention be questioned." Although DCF staff investigated the grievance, Mr. Brewer claims two DCF employees, identified as Defendant Captain Riddle and Defendant Corrections Officer Pinley, failed to properly investigate the alleged

---

[1] Because Mr. Brewer proceeds pro se, we construe his filings liberally. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

2

sexual assault.[2] Mr. Brewer charges that Defendants Riddle's and Pinley's investigation exhibited deliberate indifference to the alleged assault and violated Mr. Brewer's constitutional rights under the Eighth and Fourteenth Amendments. Mr. Brewer also raises a similar claim against a DCF employee identified as Corrections Officer Fnu Pavlukevick.

In addition, the complaint alleges that after Mr. Brewer reported the sexual assault, Jimmy Martin, the administrative assistant to the DCF Warden, conspired with Internal Affairs Officers and Oklahoma State Penitentiary (OSP) Deputy Warden, Art Lightle, to transfer Mr. Brewer to OSP in order to prevent him from filing the instant lawsuit.

Mr. Brewer further claims the prison conditions at OSP violated his Eighth and Fourteenth Amendment rights. Specifically, he asserts he was placed in various unlit cells that smelled of urine, feces, and sewage. He also claims OSP officials did not give him a mattress, bedroll, or adequate food and water.

Mr. Brewer infers that these prison conditions were the product of racial discrimination. He claims there is a history of racial discrimination at OSP and that all high-ranking corrections officers are white. According to Mr. Brewer, various OSP employees, including Defendant Lightle, used racial epithets when referring to President Barack Obama or African-American prisoners.

---

[2] Mr. Brewer sometimes refers to Defendant Pinley as Officer Pentley.

3

Mr. Brewer claims he submitted to the ODOC several administrative grievances challenging the prison conditions at OSP, two to Warden Randall Workman and one to Director's Designee Debbie Morton, but received no response. Mr. Brewer also alleges he filed several emergency grievances to the ODOC Director's Designee, Defendant Mark Knutson, claiming racial discrimination and a lack of water in his cell because the faucet was broken. Mr. Brewer claims Defendant Knutson refused to address these grievances.

Defendants Crenshaw, Jones,[3] Knutson, Parker, Sherwood, Taylor, and Lightle filed a motion to dismiss on the ground that Mr. Brewer failed to establish their personal participation in any constitutional violations. Defendants Riddle and Pinley also filed a motion to dismiss, arguing that Mr. Brewer had failed to properly exhaust his administrative remedies as to them. In response, Mr. Brewer filed three motions to amend his complaint, asserting in relevant part that he should be entitled to name additional defendants, including Internal Affairs Officers Randy Knight and Ken Yott.[4]

The district court agreed with Defendants Crenshaw, Jones, Knight, Knutson, Parker, Sherwood, Taylor, and Lightle that Mr. Brewer's claims of constitutional violations were vague, conclusory, and failed to sufficiently assert that these named

_____

[3] The complaint names former ODOC Director Justin Jones, but Mr. Brewer does not identify any allegations of specific misconduct on the part of this defendant.

[4] Neither Officer Knight nor Officer Yott was served with the complaint. But Officer Knight entered an appearance in the district court.

4

defendants had personally violated Mr. Brewer's constitutional rights. *See Brewer v. Gilroy*, No. CIV 13-471-RAW-SPS, 2015 U.S. Dist. LEXIS 33393, at *19 (E.D. Okla. Mar. 18, 2015) ("Personal participation is an essential allegation in a § 1983 claim." (quoting *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976))). The district court also dismissed without prejudice Mr. Brewer's claims that Defendants Riddle and Pinley failed to properly investigate the sexual assault allegations against Defendant Gilroy because Mr. Brewer had failed to exhaust his administrative remedies with respect to those claims.[5] *Id.* at *12-*13, *22. Ultimately, the court found the complaint frivolous,[6] dismissed the action in its entirety, and assessed a strike against Mr. Brewer.[7] *Id.* at *23; *see Smith v. Veterans Admin.*, 636 F.3d 1306, 1313 (10th Cir. 2011) ("Under the PLRA, prisoners obtain a 'strike' against them for purposes of future IFP eligibility when their action or appeal in a court of the United States . . . [is] dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . ." (first and third alterations in original)

---

[5] The district court dismissed without prejudice Mr. Brewer's claims against Defendants Gilroy, Pavlukevick, and Martin because the United States Marshals Service was unable to serve them due to Mr. Brewer's failure to provide their current addresses. *See* Fed. R. Civ. P. 4(m); 12(b)(5) (permitting dismissal for insufficient service of process). Mr. Brewer has not challenged the court's dismissal of the claims against these defendants and we do not consider them further.

[6] In dismissing the case as frivolous, the district court also found "there are no allegations that Internal Affairs Officers Knight and Yott personally participated in constitutional violations against plaintiff." *Brewer v. Gilroy*, No. CIV 13-471-RAW-SPS, 2015 U.S. Dist. LEXIS 33393, at *19 (E.D. Okla. Mar. 18, 2015).

[7] Mr. Brewer has not challenged the district court's imposition of a strike against him on appeal.

5

(internal quotation marks omitted)); *see also Childs v. Miller*, 713 F.3d 1262, 1266 (10th Cir. 2013) ("In this circuit, it is immaterial to the strikes analysis that the dismissal was without prejudice.").

Mr. Brewer timely appealed, and the district court, which had granted Mr. Brewer leave to file his complaint in forma pauperis (IFP) under 28 U.S.C. § 1915 (*see* Dkt. No. 5),[8] also granted Mr. Brewer leave to proceed IFP on appeal. *See Lister v. Dep't of Treasury*, 408 F.3d 1309, 1312 (10th Cir. 2005) ("[I]n order to succeed on a motion to proceed IFP, the movant must show a financial inability to pay the required filing fees, as well as the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised in the action.").

## II. DISCUSSION

On appeal, Mr. Brewer challenges the district court's exhaustion ruling and persists in his claim that Defendants Crenshaw, Jones, Knight, Knutson, Parker, Sherwood, Taylor, and Lightle violated his constitutional rights during his incarceration at OSP. In addition, he argues the district court improperly overlooked his claim of civil conspiracy against DCF and OSP employees for allegedly conspiring to transfer him to OSP to prevent him from filing the instant lawsuit. He also claims the district court should have permitted him to amend his complaint to cure any deficiencies rather than to dismiss it with prejudice. We first consider the district court's exhaustion ruling before turning to the merits of Mr. Brewer's

---

[8] All references to district court docket numbers will be in the format "Dkt. No. __" and refer to the district court filings in this case.

6

constitutional claims. Finally, we address whether the district court properly dismissed Mr. Brewer's complaint without permitting him to amend.

### A. Exhaustion of Administrative Remedies

We review de novo the district court's determination that Mr. Brewer's constitutional claims against Defendants Riddle and Pinley were barred for failure to exhaust his administrative remedies. *See Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). Under the Prison Litigation Reform Act (PLRA), prisoners are required to exhaust their administrative remedies before initiating an action to vindicate federally protected rights. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The exhaustion requirement is an affirmative defense. Therefore, defendants "bear the burden of asserting and proving that the plaintiff did not utilize administrative remedies." *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011). "Once a defendant proves that a plaintiff failed to exhaust, however, the onus falls on the plaintiff to show that remedies were unavailable to him . . . ." *Id.*

Here, we have little difficulty concluding Mr. Brewer's claims against Defendants Riddle and Pinley are barred for failure to exhaust administrative remedies. Although Mr. Brewer filed an administrative grievance regarding the alleged sexual assault, he did not assert the constitutional claims he now brings against these defendants for failure to adequately investigate his allegations. And

7

Mr. Brewer points to nothing that convinces us that acts of prison officials rendered those administrative remedies unavailable. *Cf. Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) (holding that exhaustion is not required "[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy"). Rather, the administrative grievance process appears to have been available to Mr. Brewer at both the DCF and OPS facilities. *See Patel v. Fleming*, 415 F.3d 1105, 1111 (10th Cir. 2005) (holding that a prisoner failed to exhaust administrative remedies where, after he was transferred to a different facility, he failed to timely file his grievance); *Gonyea v. Mink*, 206 F. App'x 745, 747 (10th Cir. 2006) (rejecting inmate's claim that grievance process was unavailable where he could have filed a grievance against a county prison after his transfer to a county jail and in fact had filed multiple administrative requests with the jail).[9] Thus, the district court properly dismissed without prejudice Mr. Brewer's claims against Defendants Riddle and Pinley.

### B. Dismissal for Failure to State a Claim

Next, we consider whether the district court properly dismissed Mr. Brewer's claims against Defendants Crenshaw, Jones, Knight, Knutson, Parker, Sherwood, Taylor, and Lightle for failure to state a plausible claim that any named defendant violated Mr. Brewer's constitutional rights. The district court granted these

---

[9] Though not binding, we find unpublished decisions from this court to be persuasive. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

8

defendants' 12(b)(6) motion to dismiss these claims and, acting sua sponte, it also

dismissed Mr. Brewer's IFP complaint as frivolous under 28 U.S.C. § 1915.[10]

We review de novo a district court's dismissal pursuant to Rule 12(b)(6) and,

although we construe Mr. Brewer's pro se complaint liberally,[11] "our role is not to act

as his advocate." *Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009). We

also review de novo the district court's decision to dismiss an IFP complaint under 28

U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. *See Kay v. Bemis*, 500 F.3d

1214, 1217 (10th Cir. 2007). And "[w]e apply the same standard of review for

dismissals under § 1915(e)(2)(B)(ii) that we employ for Federal Rule of Civil

Procedure 12(b)(6) motions to dismiss for failure to state a claim." *Id.; see also*

*McKinley v. Maddox*, 493 F. App'x. 928, 931 (10th Cir. 2012) (same).

To determine under Rule 12(b)(6) whether Mr. Brewer has sufficiently stated

his claims, we accept as true the well-pled factual allegations and consider whether

he has provided "enough facts to state a claim to relief that is plausible on its face."

*See Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 547 (2007)). Because Mr. Brewer is bringing his claims

pursuant to § 1983, his complaint "must plead that each Government-official

---

[10] This Section provides that "the court shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(i) & (ii).

[11] "This liberal treatment is not without limits, and 'this court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants.'" *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)).

defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). The complaint must therefore "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" as to the specific constitutionally impermissible actions allegedly committed by each named defendant to survive a motion to dismiss as to each defendant. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). "Conclusory allegations are not enough to withstand a motion to dismiss." *Gallagher*, 587 F.3d at 1068.

Mr. Brewer's complaint, read liberally, asserts that (1) the prison conditions at OSP constituted cruel and unusual punishment and denied him due process; (2) OSP and ODOC prison officials refused to address grievances submitted through the mandatory prisoner grievance process in violation of his Fifth and Fourteenth Amendment due process rights; (3) OSP and ODOC prison officials racially discriminated against him in violation of equal protection; and (4) DCF and OSP employees conspired to transfer him to OSP to prevent him from filing the instant lawsuit.

In considering the sufficiency of the allegations in the complaint supporting these claims, we conclude the district court properly dismissed Mr. Brewer's complaint.

**1.    Challenge to the Prison Conditions at OSP**

Mr. Brewer's challenges to the prison conditions at OSP arise under the Eighth and Fourteenth Amendments to the U.S. Constitution. "The Eighth Amendment,

which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of cruel and unusual punishments on those convicted of crimes." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 809 (10th Cir. 1999) (quoting *Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991)). The Eighth Amendment requires that prison officials "provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (internal quotation marks omitted). Likewise, "[t]he Fourteenth Amendment prohibits any State from depriving a person of life, liberty, or property without due process of law." *Perkins*, 165 F.3d at 808 (quoting *Meachum v. Fano*, 427 U.S. 215, 223 (1976)). "A prisoner's liberty interests may arise . . . from state law." *Id.* But state-created liberty interests are generally limited to conditions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)). As noted, "[i]n determining whether a dismissal is proper, we must accept the allegations of the complaint as true and construe those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff." *Kay*, 500 F.3d at 1217 (internal quotation marks omitted).

### a. Abuses by prison employees not named as defendants

Mr. Brewer asserts prison officials at OSP violated his constitutional rights when they placed him in unlit cells that smelled of urine, feces, or sewage, and

11

refused to give him a mattress, bedroll, or adequate food and water. According to Mr. Brewer, he was denied food entirely for seven days. He further alleges that at other times, prison employees threw food into his cell so that he would have to eat off the floor.

Taken as true, these allegations might well support a plausible claim under the Eighth or Fourteenth Amendments.[12] However, Mr. Brewer's claims based on these allegations fail because the named defendants are not the individuals Mr. Brewer claims were personally involved in these alleged abuses.

For instance, Mr. Brewer alleges that on the day of his transfer to OSP, March 4, 2012, a Sergeant Hammell and Corporal Crenshaw, the son of named defendant Terry Crenshaw, denied him food at lunch and dinner. Other than the fact that Terry Crenshaw and Corporal Crenshaw are father and son, respectively, Mr. Brewer provides no explanation why the named defendant, Terry Crenshaw, should be liable for the alleged conduct of Corporal Crenshaw, who is not named as a defendant.

---

[12] *Compare Barney v. Pulsipher*, 143 F.3d 1299, 1311 (10th Cir. 1998) (finding no constitutional violation where plaintiffs were temporarily placed in a filthy cell with inadequate lighting and ventilation, there was a lack of enclosures around the shower and toilet, the prison provided unappetizing food, and there was no access to recreational facilities), *with Mitchell v. Maynard*, 80 F.3d 1433, 1442 (10th Cir. 1996) (concluding prisoner sufficiently alleged constitutional violation where he claimed he was "provided no mattress, blankets or bedding of any kind, . . . not allowed to leave his cell for exercise, not provided with writing utensils, not provided with adequate ventilation, . . . and only sometimes allowed minimal amounts of toilet paper," and "[t]hese conditions supposedly lasted for a period of days, weeks and months").

Mr. Brewer further alleges that because the cell to which he was initially assigned had no lights or working plumbing, Mr. Brewer covered the window to get attention. He alleges a Captain Kennedy responded and moved him to another cell that had functioning plumbing, but also lacked working lights. Mr. Brewer claims he told Captain Kennedy he had not been fed, but Captain Kennedy responded that it was 1:30 a.m. and the kitchen was closed. According to Mr. Brewer, he then went seven consecutive days and nights without food.

Mr. Brewer identifies the person responsible for bringing his food as Sergeant Spears[13] and alleges Ms. Spears explained to him that Deputy Warden Art Lightle had imposed a seven day sack lunch restriction on Mr. Brewer but the kitchen was not sending the sack lunches. When Mr. Brewer asked for one of the trays of food visible on Ms. Spears' food cart, she allegedly refused, explaining that the sack lunch restriction prohibited him from having a tray lunch, even if the kitchen was not actually sending the sack lunches.

Mr. Brewer further asserts that an African American corrections officer, Sergeant Richard Buie, brought Mr. Brewer sack lunches during his shifts. When Mr. Brewer informed Lieutenant Glover, Ms. Spears' superior, that Ms. Spears was not bringing him food, Lieutenant Glover claimed to have seen Mr. Brewer receive every meal over the security cameras. Mr. Brewer alleges that after Sergeant Buie

---

[13] Mr. Brewer's complaint makes allegations against two corrections officers who are married to each other and are both identified as Sergeant Spears in the record. For clarity and because the record does not provide a first name for Ms. Spears, we refer to them as Mr. and Ms. Spears in this decision.

13

told the kitchen to send sack lunches to Mr. Brewer, Ms. Spears withheld them, even when he could see his name and cell number on sack lunches on her cart. But Mr. Brewer has not named Ms. Spears, Captain Kennedy, or Lieutenant Glover as defendants in this action.

Mr. Brewer asserts he informed Chief Peters that he had not received his sack lunches for seven days (except for, presumably, the lunches Sergeant Buie brought him). In response, Chief Peters allegedly agreed to have his lieutenants personally bring Mr. Brewer his lunches. Mr. Brewer contends Lieutenant Glover and Lieutenant Jowels thereafter threw Mr. Brewer's food into his cell so that he would have to eat it off the floor, which he claims contained puddles of water from leaks in the quad's roof that had seeped in under the door of his cell. Mr. Brewer also failed to name Lieutenant Jowels as a defendant in his complaint.

Mr. Brewer next alleges he was moved to a different quad where Ms. Spears' husband, Sergeant David Spears, was responsible for food delivery. Mr. Spears and an Officer Heartfield allegedly told the inmate "run man"[14] on the quad that he would fire him if he gave Mr. Brewer anything. Mr. Brewer claims his new cell again had no functioning lighting, and he could see and smell raw sewage coming up from the pipes. According to Mr. Brewer he was not provided with a mattress or bed roll for seven days and was eating only every other day. When a new inmate run man was

---

[14] "The run man is responsible for cleaning the Quad and passing out tea, juice, milk, coffee, toilet tissue, clothing, and indigent hygiene items." *Brewer*, 2015 U.S. Dist. LEXIS 33393, at *16.

assigned to the quad, Mr. Brewer alleges Officer Heartfield repeated his instruction that Mr. Brewer not be given anything from the cart.[15] Mr. Brewer claims he complained to corrections officers Sergeant Taylor[16] and Sergeant Hands, who refused to intervene. Mr. Spears, Officer Heartfield, Sergeant Taylor, and Sergeant Hands are also not named as defendants in this action.

Mr. Brewer further alleges that a year after complaining about these issues, Deputy Warden Art Lightle and Unit Manager William Taylor moved him to a high max cell.[17] According to Mr. Brewer, unnamed corrections officers again denied him food for several days after the move. Mr. Brewer does not identify the prison officials who allegedly withheld food from him while he was housed in a high max cell and offers no allegations connecting these activities to any named defendants.

---

[15] Mr. Brewer adds here an allegation that seems to imply that named defendant Case Manager Sherwood joined Officer Heartfield in this statement to the run man. However, this sole allegation in the complaint relating to Keith Sherwood (reading, in its entirety, "also the case manager Sharewood!") is simply too tenuous to implicate him, even if the denial of access to items from the run man's cart could rise to the level of a constitutional violation.

[16] Although it is unclear from the allegations in the complaint, this Sergeant Taylor appears to be a different individual than the named Unit Manager William Taylor, based on the plainest reading of the language in the complaint.

[17] Although Mr. Brewer does not provide further details about this in his complaint beyond noting that such a move is usually for punishment and he believes he had not been guilty of any misconduct since he arrived at OSP, in one of the grievance notices he attached to his complaint, he explains that he was moved to a high max cell for allegedly throwing something on the run man.

15

*b. Allegations against named defendants*

The district court correctly dismissed Mr. Brewer's claims, despite his detailed factual allegations, because he failed to allege that any named defendant personally participated in the alleged deprivations. *See Mitchell*, 80 F.3d at 1441 (affirming district court's dismissal of claim where plaintiff failed to link the named appellees to the unconstitutional action, and holding that supervisor status by itself is insufficient to support liability). In the absence of specific allegations against one or more named defendants, Mr. Brewer cannot maintain a claim with respect to the conditions at OSP. *See Bennett*, 545 F.2d at 1262–63 ("Personal participation is an essential allegation in a § 1983 claim.").

To the extent Mr. Brewer has made allegations against the named defendants, we agree with the district court that the specific allegations of misconduct against Defendants Crenshaw, Sherwood, Taylor, and Lightle do not establish actionable due process or Eighth Amendment violations. For example, placing Mr. Brewer on a temporary sack lunch restriction does not implicate due process, *see, e.g.*, *Rogers v. Holt*, 49 F. App'x 231, 232 (10th Cir. 2002) (holding that there was no arguable due process claim where the prisoner alleged the denial of recreation and substitution of sack lunches for a period of five days), nor does the discretionary decision to transfer him to a high-max cell, *see, e.g.*, *Meachum v. Fano*, 427 U.S. 215 (1976) (ruling that changes in prison security classifications do not implicate the Fourteenth Amendment and, therefore, transfer to another, more restrictive prison does not violate due process) *and Twyman v. Crisp*, 584 F.2d 352, 356–57 (10th Cir. 1978) (concluding

16

that discretionary intra state prison transfers and change of security status do not give rise to due process rights).

Likewise, the allegation that Defendant Parker falsified Mr. Brewer's prison record in order to conceal a refusal to follow OSP policy regarding yard time and showers, even if taken as true, is too vague to establish an actionable constitutional claim. Indeed, Mr. Brewer's complaint fails to provide any factual detail regarding this claim. Without such information, it is impossible to tell whether the alleged restrictions on yard time and showers implicate the Due Process Clause. *Compare Perkins*, 165 F.3d at 810 (recognizing that the total denial of exercise for an extended period of time could constitute cruel and unusual punishment), *with Marshall v. Morton*, 421 F. App'x 832, 838 (10th Cir. 2011) (holding that "restrictions on an inmate's telephone use, property possession, visitation and recreation privileges are not different in such degree and duration as compared with the ordinary incidents of prison life to constitute protected liberty interests under the Due Process Clause").

For these reasons, Mr. Brewer has failed to sufficiently allege that Defendants Crenshaw, Jones, Knight, Parker, Sherwood, Taylor, or Lightle violated his constitutional rights, and the district court correctly dismissed his due process and Eighth Amendment claims against these named defendants.

## 2. Disposition of Grievances

Throughout this period at OSP, Mr. Brewer alleges he submitted a number of grievances to the prison administration. During March 2012, when he alleges Mr. and Ms. Spears were withholding his food and Lieutenants Glover and Jowels were

17

throwing his food onto his cell floor, Mr. Brewer claims he filed three grievances and a "Request to Staff" with the prison administration. Mr. Brewer asserts he sent two grievances to Warden Randall Workman and one to Director's Designee Debbie Morton. He claims he did not receive responses to these grievances and that he was moved to a high max cell a year after making these complaints.[18]

Because he felt prison officials were inadequately addressing his complaints, Mr. Brewer wrote directly to Deputy Director D.B. Parker. Mr. Brewer credits writing to Deputy Director Parker with improving the situation because he was then granted yard and exercise time, allowed showers three times a week, and provided three meals every day. Mr. Brewer nevertheless filed further grievances with the Director's Designee Mark Knutson, one labeled an "emergency" grievance relating to the allegedly broken water faucet in his high max cell and two others labeled alternatively "emergency" and "sensitive" relating to racial discrimination he claimed he was experiencing at that time. Mr. Brewer claims Mr. Knutson responded that his broken water faucet was not an "emergency" and that Mr. Knutson "refused to address the racism issues."

The district court outlined the requirements of the mandatory grievance process in use by the ODOC at the relevant time. *See Brewer*, 2015 U.S. Dist. LEXIS

---

[18] Neither Randall Workman nor Debbie Morton is named as a defendant in this case.

33393, at *10-*11.[19] In addressing Mr. Brewer's claims about deficiencies in the disposition of his grievances, the district court considered the *Martinez* reports it had ordered defendants to prepare. *See id.* at *1.[20] The uncontroverted *Martinez* report relating to OSP (Dkt. No. 61) included a sworn affidavit of Director's Designee Mark Knutson (Dkt. No. 61, Ex. 15). In his affidavit, Mr. Knutson addresses each of the grievances filed by Mr. Brewer and the disposition of each according to the ODOC

---

[19] The district court described the process as follows:

> According to DOC Policy OP-090124, "Inmate/Offender Grievance Process," an inmate first must attempt to resolve his complaint informally. If that is unsuccessful, he may submit a Request to Staff (RTS). If the complaint still is not resolved, he then may file a grievance. If the grievance also does not resolve the issue, the inmate may appeal to the Administrative Review Authority or the Chief Medical Officer. The administrative process is exhausted only after all of these steps have been taken. . . . .

> Both DOC and CCA/DCF policies provide a specific remedy to an inmate in the event of failure of staff to respond to a RTS. Pursuant to DOC policy, if there has been no response within 30 calendar days of submission, the inmate may file a grievance to the reviewing authority with evidence of submitting the RTS to the proper staff member. The grievance may assert only the issue of lack of response to the RTS.

*Brewer*, 2015 U.S. Dist. LEXIS 33393, at *10-*11. Moreover, the ODOC grievance policies "permit a prisoner to circumvent the informal resolution processes and submit a grievance without first talking to an appropriate official and submitting a Request to Staff, provided that the grievance addresses a sensitive or emergency matter. A prisoner must use a particular form and write the word 'emergency' at the top of the form." *Smith v. Beck*, 165 Fed. Appx. 681, 684 (10th Cir. 2006) (citation omitted).

[20] Although a "*Martinez* report may not be used to resolve disputed factual issues," in the Tenth Circuit, "an uncontroverted report may serve as the basis for a dismissal" on a 12(b)(6) motion. *Gallagher*, 587 F.3d at 1068 n.7.

19

grievance procedures in effect at that time, including the reason that each grievance was returned or denied.[21]

Mr. Brewer has no independent due process rights that arise out of OSP or ODOC employees' disposition of internal grievances. *See, e.g., Gallagher*, 587 F.3d at 1069 (holding that allegations related to the denial of prisoner's grievances were insufficient to state a cognizable due process claim); *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011) (holding that there is no independent constitutional right to state prison administrative grievance procedures). And the uncontroverted *Martinez* report relating to OSP reveals Mr. Brewer's allegations of deficiencies in the disposition of his grievances as specious. The district court therefore correctly dismissed Mr. Brewer's claims against Mr. Knutson.

## 3. Racial Discrimination at OSP

---

[21] For example, Mr. Brewer's "sensitive emergency grievance" of September 27, 2012 complaining of being placed on restriction was "unanswered due to the issue not being of an emergency or sensitive nature," and Mr. Brewer "was directed to follow the standard grievance process." Mr. Brewer's May 30, 2013 "emergency grievance" relating to the broken water faucet "went unanswered due to the issue not being of an emergency nature," and because Mr. Brewer had failed "to provide information regarding any informal action taken to resolve the complaint." Mr. Brewer's first grievance to Mr. Knutson about alleged racial discrimination, dated September 17, 2013 and marked "sensitive," was unacceptable under the guidelines because it was not "of a sensitive nature," and Mr. Brewer "was directed to follow the standard grievance process." Finally, Mr. Brewer's second grievance alleging racial discrimination, dated August 23, 2014, suffered from the "procedural error of raising multiple issues in one grievance," and this was indicated to Mr. Brewer on the response form. (*See* Dkt. No. 61, Ex. 15, Affidavit of Mark Knutson dated June 11, 2014, at ¶¶ 7-11.)

We also agree with the district court that Mr. Brewer has not sufficiently

alleged an equal protection violation. "Equal protection 'is essentially a direction that

all persons similarly situated should be treated alike'." *Grace United Methodist*

*Church v. City of Cheyenne*, 427 F.3d 775, 792 (10th Cir. 2005) (quoting *City of*

*Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)), *vacated on rehearing*

*on other grounds by* 451 F.3d 643 (10th Cir. 2006). Thus, to establish an equal

protection violation, Mr. Brewer must allege facts that show the defendants treated

him differently than other similarly situated prisoners. *Fogle v. Pierson*, 435 F.3d

1252, 1261 (10th Cir. 2006).[22]

Considering Mr. Brewer's complaint under this standard, we conclude it fails

to state a plausible equal protection claim against any named defendant.

Mr. Brewer's generic allegations of racial discrimination at OSP—ungrounded in

specific factual averments that would show that he was treated differently from

similarly situated white prisoners—are insufficient to state a plausible equal

protection claim. *Compare Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1322–23 (10th

Cir. 2010) (holding that plaintiff could not show an equal protection violation where

he made vague and conclusory allegations but failed to provide specific facts

_____

[22] Because Mr. Brewer asserts an equal protection claim based on race, it is unnecessary for him to show that his treatment was not reasonably related to some legitimate penological purpose. *See Tennyson v. Carpenter*, 558 F. App'x 813, 820 (10th Cir. 2014); *cf. Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994) (concluding that because the prisoner failed to allege disparate treatment on the basis of any suspect classification, he was required to show that the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose).

showing that white inmates were treated more favorably), *with Tennyson v. Carpenter*, 558 F. App'x 813, 820 (10th Cir. 2014) (concluding that an equal protection claim was not frivolous where the defendant alleged that he was the only African American in the choir and the only member disciplined for conduct common to all choir members, thereby alleging a suspect classification based on race). For this reason, the district court correctly rejected Mr. Brewer's claims that defendants Crenshaw, Jones, Knight, Knutson, Parker, Sherwood, Taylor, or Lightle impermissibly discriminated against him on the basis of his race.

4.      **Civil Conspiracy Claim**

We also reject Mr. Brewer's contention that he sufficiently pled a civil conspiracy claim. Although the district court was required to read Mr. Brewer's complaint liberally, it was under no obligation to craft Mr. Brewer's claims for him. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[Although] a pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers[,]" it is improper for "the district court to assume the role of advocate for the pro se litigant."). Mr. Brewer's complaint cannot be fairly read to assert a plausible civil conspiracy claim, even under the most generous reading. Rather, this claim consists of a few conclusory assertions of conspiracy, without providing any specific facts that would establish any named defendants took concerted action to transfer Mr. Brewer to OSP to prevent him from filing the instant lawsuit. We agree with the district court that this is insufficient to raise a civil conspiracy claim. *See Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504,

22

533 (10th Cir. 1998) (explaining that although allegations of conspiracy can form a § 1983 claim, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants[;] [c]onclusory allegations of conspiracy are insufficient" (internal quotation marks and citation omitted)).

### C. Dismissal Without Permitting Amendment

Finally, we consider whether the district court properly dismissed Mr. Brewer's complaint without permitting him leave to amend. A "district court should allow a plaintiff an opportunity to cure technical errors or otherwise amend the complaint when doing so would yield a meritorious claim." *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001). But the district court need not permit an opportunity to amend when "it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999) (internal quotation marks omitted).

Here, the district court found Mr. Brewer's complaint frivolous, dismissing it without granting him leave to amend. *Brewer v. Gilroy*, No. CIV 13-471-RAW-SPS, 2015 U.S. Dist. LEXIS 33393, at *23 (E.D. Okla. Mar. 18, 2015). Mr. Brewer did not provide necessary additional factual averments in his filings with the district court to make out plausible claims that any named defendants violated his constitutional rights. Specifically, Mr. Brewer's three motions to amend failed to identify any allegations that would have cured the deficiencies in his complaint. *See, e.g., Curley*, 246 F.3d at 1284 (affirming a district court's sua sponte dismissal of a complaint for

23

failure to state a claim where the plaintiff failed to file a motion to reconsider explaining why the dismissal was erroneous). The district court did not abuse its discretion in dismissing Mr. Brewer's complaint without granting him leave to amend because Mr. Brewer's proposed amendments would have been futile. *See Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir 2007) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." (internal quotation marks omitted)).

### III. CONCLUSION

We therefore AFFIRM the district court's dismissal of Mr. Brewer's complaint and its assessment of one strike against Mr. Brewer.[23] The district court permitted Mr. Brewer leave to proceed in forma pauperis on appeal, but we remind him of his obligation to continue making partial payments until the entire fee has been paid.

ENTERED FOR THE COURT

Carolyn B. McHugh
Circuit Judge

---

[23] We affirm the strike assessed against Mr. Brewer because he did not challenge it on appeal. But because we agree with the district court that Mr. Brewer's appeal is not frivolous, we do not impose a second strike. *See Jennings v. Natrona Cnty. Det. Ctr. Med. Facility*, 175 F.3d 775, 780 (10th Cir. 1999).